88 P.3d 196

**ALLSTATE INSURANCE COMPANY
and Allstate Indemnity Company,
Appellants–Appellants,**

v.

**J.P. SCHMIDT,[1] Insurance Commissioner,
Department of Commerce and Consumer Affairs, State of Hawai'i, Appellee–
Appellee.**

No. 23495.

Supreme Court of Hawai'i.

April 16, 2004.

---

**1.** At the time this case arose, Wayne C. Metcalf, III was the Insurance Commissioner with the State of Hawai'i, Department of Commerce and Consumer Affairs, the appellee-appellee in this appeal. Pursuant to Hawai'i Rules of Appellate Procedure, Rule 43(c) (2003) (entitled "Substitu-tion of parties"), the current Commissioner, J.P. Schmidt, has been substituted as the named party in this case. *See, e.g., TIG Ins. Co. v. Kauhane,* 101 Hawai'i 311, 311 n. 1, 67 P.3d 810, 810 n. 1 (App.2003) (substituting J.P. Schmidt for Wayne Metcalf, III).

Richard B. Miller and Mark K. Morita (of Tom Petrus & Miller, LLLC), Honolulu, on the briefs, for Appellants–Appellants, Allstate Insurance Company and Allstate Indemnity Company.

Deborah Day Emerson and David A. Webber, Deputy Attorneys General, On the briefs, for Appellee–Appellee, J.P. Schmidt, Insurance Commissioner, Department of Commerce and Consumer Affairs, State of Hawai‘i.

MOON, C.J., NAKAYAMA, ACOBA, and DUFFY, JJ., and Circuit Judge IBARRA, in Place of LEVINSON, J., Recused.

Opinion of the Court by DUFFY, J.

Appellants-appellants Allstate Insurance Company and Allstate Indemnity Company [hereinafter collectively, Allstate] appeal from the judgment of the first circuit court, the Honorable Eden Elizabeth Hifo presiding, in favor of appellee-appellee J.P. Schmidt, Insurance Commissioner, Department of Commerce and Consumer Affairs, State of Hawai‘i (the Commissioner). Specifically, Allstate appeals from the circuit

court's final judgment, filed on May 8, 2000, affirming the Commissioner's October 15, 1999 final order.

This appeal involves the interpretation of Hawai‘i Revised Statutes (HRS) § 431:10C–207 (1993).[2] The Commissioner contends that this statute prohibits an insurer from discriminating against an applicant for automobile insurance on the basis of that individual's length of driving experience; Allstate argues that this statute does prohibit discrimination in setting insurance rates, but does not prohibit an insurer from discriminating against an individual on the basis of length of driving experience in underwriting (i.e., in determining whether to issue a policy to a particular individual).

Based on the following, we affirm the judgment of the circuit court and hold that HRS § 431:10C–207 prohibits discrimination on the basis of length of driving experience in underwriting.

## I. BACKGROUND

On August 9, 1996, Kaoru N. Reinertson filed a written complaint with the State of Hawai‘i's Insurance Division, Department of Commerce and Consumer Affairs, regarding Allstate's calculation of her insurance premium. Initially, Allstate declined Ms. Reinertson's application: Allstate required an insured to hold a driver's license for more than one year, and Ms. Reinertson had held a driver's license for less than one year at the time of her application. Allstate explicitly stated that it based its rejection of Ms. Reinertson's application on the length of her driving experience. Allstate instead wrote a policy for Ms. Reinertson through a joint underwriting plan (JUP).[3]

**2.** HRS § 431:10C–207 provides:

> **Discriminatory practices prohibited.** No insurer shall base any standard or rating plan, in whole or in part, directly or indirectly, upon a person's race, creed, ethnic extraction, age, sex, length of driving experience, credit bureau rating, marital status, or physical handicap.

**3.** HRS § 431:10C–401 (1993) established the JUP and requires that virtually all motor vehicle insurers participate. The purpose of the JUP is to "assur[e] that insurance for motor vehicles

will be conveniently and expeditiously afforded ... to all applicants for insurance ... who cannot reasonably obtain insurance at rates not in excess of those applicable to applicants under the plan, or who otherwise are in good faith entitled to, but unable to obtain, the insurance through ordinary methods." HRS § 431:10C–407(a) (1993 & Supp.2003). Presumably, the JUP categorization led to the high premium quote which led to Ms. Reinertson's complaint.

On November 18, 1996, the Chief Deputy Insurance Commissioner issued Allstate a Cease and Desist Order, instructing Allstate that it may not use the length of an applicant's driving experience as a basis for rejecting her or his application for insurance. The Order also instructed Allstate to pay a penalty of $3,000.00 for violating HRS § 431:10C–207. Allstate timely requested a hearing on the Cease and Desist Order. The parties agreed to proceed on the basis of the legal briefs and stipulated facts rather than have a formal hearing.

### 1. The hearings officer's recommendations

The hearings officer issued her findings of fact, conclusions of law, and recommended order on June 15, 1999. The hearings officer recommended that the Insurance Commissioner vacate the Cease and Desist Order, concluding that HRS § 431:10C–207 applies only to rate making and not to underwriting. The hearings officer based her ruling on the statutory context and legislative history of HRS § 431:10C–207. First, she pointed to the statutory context: she noted that HRS § 431:10C–207 is included in Part II of Article 10C (entitled "Rates and Administration") rather than in Part I of Article 10C (entitled "General Provisions"). Part II of Article 10C contains a number of statutory provisions on motor vehicle insurance rates and rate administration, see, e.g., HRS §§ 431:10C–201 to 431:10C–203, 431:10C–208 to 431:10C–210 (1993 & Supp.2003), whereas Part I of Article 10C contains statutory provisions relating to rejection, cancellation, and renewal of policies, see, e.g., HRS §§ 431:10C–110 to 431:10C–114 (1993 & Supp.2003). Second, the hearings officer looked to the legislative history of the motor vehicle insurance code. She noted that, prior to 1993, an insurer had virtually no discretion as to whether to accept or reject an applicant for automobile insurance because of the "take all comers" statute then in effect.[4] Therefore, prior to 1993, a statutory provision relating to discrimination in *underwriting* (*i.e.*, HRS § 431:10C–207) would have been superfluous. The hearings officer concluded that, prior to 1993, HRS § 431:10C–207's prohibitions on discrimination must have related to rate making rather than underwriting. The hearings officer also concluded that the scope of HRS § 431:10C–207 did not change upon the repeal of the "take all comers" provision in 1993. In fact, the hearings officer noted, some legislators opposed the repeal of the "take all comers" provision because they believed an insurer would be able to discriminate against applicants on the basis of age, sex, and residence location. Hse. Conf. Comm. Rep. No. 124, in 1993 House Journal at 799–801; 1993 House Journal, Special Session, at 19–24.

### 2. The Commissioner's order

The Commissioner reversed the hearings officer's recommended decision. The Com-

---

**4.** In 1993, the legislature repealed HRS § 431:10C–110, entitled "Application for coverage, restriction against rejection of and grounds for rejection" and commonly known as the "take all comers" provision, which provided:

> *An insurer* authorized to issue a no-fault policy, including a general agent, subagent or solicitor, *may not reject an application* for a no-fault policy or optional additional insurance which insurers are required to make available, covering a motor vehicle, *unless:*
> (1) *The principal operator of the vehicle does not have a license* which permits operation of the vehicle; *or*
> (2) *The application is not accompanied by at least six months['] premium for the coverage.* Nothing in this paragraph shall prohibit an insurer, at its discretion, from accepting a minimum of two months' premium and issuing a policy; provided that a temporary no-fault iden-

tification card may not be issued for a period exceeding the period for which premiums have been paid or earned. A no-fault identification card in compliance with section 431:10C–107 [ (providing for issuance of no-fault identification cards) ] shall be issued by the insurer once any outstanding balance for the policy is paid. This paragraph shall apply only to the first application of a person for a no-fault policy and shall not apply to applications for commercial and fleet vehicles.

(Emphases added.) 1987 Haw. Sess. L. Act 347, § 2 at 153–54; 1993 Haw. Sess. L., Special Session, Act 4, § 2 at 10. This "take all comers" provision had been enacted in 1987 as part of the comprehensive restructuring of Hawaii's insurance laws. *See* 1987 Haw. Sess. L. Act 347, § 2 at 153–54.

missioner concluded that the plain language of the statute—HRS § 431:10C–207's reference to "any standard or rating plan"—included Allstate's underwriting guidelines and standards: "Otherwise, insurers would be able to discriminate, via underwriting guidelines and standards, against a person applying for insurance on the basis of race, creed, ethnic extraction, age, sex, length of driving experience, credit bureau rating, marital status, or physical handicap." Allstate appealed to the circuit court on November 15, 1999.

### 3. The circuit court's determinations

On appeal to the circuit court, Allstate argued that the Commissioner erred because he (1) violated the statutory scheme by improperly applying HRS § 431:10C–207 to rate making, (2) exceeded his authority by engaging in impromptu rulemaking, and (3) issued a final order that was arbitrary and capricious. On April 20, 2000, the circuit court issued its decision and order affirming the October 15, 1999 final order of the Commissioner. The circuit court determined that HRS § 431:10C–207 prohibits discrimination in underwriting and rate making, basing its decision on the language and context of HRS § 431:10C–207.

The circuit court first noted that, in 1993, the legislature amended HRS chapter 431 (specifically, HRS § 431:10C–111) to prohibit nonrenewal of an insurance policy based on the same categories as contained in HRS § 431:10C–207 (with the exception of "credit bureau rating");[5] the legislature included this amendment in the same act in which it repealed the "take all comers" provision. 1993 Haw. Sess. L., Special Session, Act 4, § 3 at 11. Allstate had argued that the specific inclusion of a statutory prohibition on nonrenewal meant that the legislature intended to permit insurers to discriminate in underwriting. However, the circuit court found no redundancy in having HRS § 431:10C–207 apply broadly to underwriting and rate making, even with the existence of HRS § 431:10C–111, because HRS § 431:10C–111 applies only if an insurer bases its decision not to renew a policy *solely* on a prohibited classification; in contrast, HRS § 431:10C–207 prevents an insurer from relying *"in whole or in part "* on a prohibited category. (Emphasis added).

The circuit court also determined that the placement of HRS § 431:10C–207 within Part II of Article 10C (instead of its pre–1987 placement within the "General Provisions" section) did not affect HRS § 431:10C–207's applicability to underwriting and rate making. Furthermore, the circuit court concluded that HRS § 431:10C–207, which prohibits discrimination in "any standard or rating plan," applies to underwriting and rate making because "the term 'standard' must mean something other than 'rating plan' under proper statutory construction."

Therefore, the circuit court affirmed the Commissioner's Order upholding the Chief Deputy Insurance Commissioner's Cease and Desist Order. Allstate appealed to this court on June 6, 2000.

## II. *STANDARDS OF REVIEW*

 Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) [(1993)] to the agency's decision. This court's review is further qualified by the principle that the agency's decision carries a presumption of validity and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan,* 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting *Bragg v.*

5. In 1993, the legislature inserted the following language into HRS § 431:10C–111:

> No insurer shall refuse to continue a no-fault policy based solely upon a person's race, creed, ethnic extraction, age, sex, length of driving experience, marital status, residence, physical handicap, or because an insured has elected to obtain any required or optional coverage or deductible required by law. . . .

1993 Haw. Sess. L., Special Session, Act 4, § 3 at 11.

*State Farm Mutual Auto. Ins.*, 81 Hawai'i 302, 304, 916 P.2d 1203, 1205 (1996)) (alteration in original). HRS § 91–14, entitled "Judicial review of contested cases," provides in relevant part:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"[U]nder HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." *In re Hawaiian Elec. Co.*, 81 Hawai'i 459, 465, 918 P.2d 561, 567 (citing *Outdoor Circle v. Harold K.L. Castle Trust Estate*, 4 Haw.App. 633, 638–39, 675 P.2d 784, 789 (1983)).

### III. *DISCUSSION*

A. *HRS § 431:10C–207 Applies To Both Underwriting And Rate Making.*

#### 1. Principles of statutory construction

 In determining whether HRS § 431:10C–207 prohibits discrimination in underwriting, we are mindful of the following canons of statutory construction:

> [T]he fundamental starting point is the language of the statute itself.... [W]here

the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning. When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

*Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996) (quoting *Housing. Fin. and Dev. Corp. v. Castle*, 79 Hawai'i 64, 76–77, 898 P.2d 576, 588–89 (1995)). " 'When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute an ambiguity exists.' " *Franks v. City and County of Honolulu*, 74 Haw. 328, 335, 843 P.2d 668, 671 (1993) (quoting *State v. Sylva*, 61 Haw. 385, 388, 605 P.2d 496, 498 (1980)). When construing an ambiguous statute, we bear in mind "that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." *Camara v. Agsalud*, 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984). If the language of the statute is ambiguous, courts may look to legislative history for assistance in construing the statute. *Franks v. City and County of Honolulu*, 74 Haw. at 335, 843 P.2d at 671–72.

#### 2. Applying these principles to the instant case

The plain language of HRS § 431:10C–207, referring to "any standard or rating plan" in prohibiting certain types of discrimination, is not entirely clear on its face. HRS chapter 431 does not define "standard"; therefore, whether "standard" includes underwriting standards, or whether "standard" means the same thing as "ratings plan," [6] is unclear.

Reading this statute in context also does not lead to a clear result: although HRS § 431:10C–207 is contained in Part II of

---

6. The legislature's use of the word "or" is not dispositive in interpreting "standard" as being different from "rating plan." *See* HRS § 1–18

(1993) (" 'Or,' 'and.' Each of the terms 'or' and 'and,' has the meaning of the other or of both.").

Article 10C (entitled "Rates and Administration"), which generally covers automobile insurance rates, several other statutory sections in Part II cover insurance practices other than rate making. *See, e.g.,* HRS §§ 431:10C–206.5 (Supp.2003) (entitled "Group insurance plans"), 431:10C–213 (1993 & Supp.2003) (entitled "Arbitration"). In other words, the statutory context of HRS § 431:10C–207 does not deal exclusively with rate making, such that HRS § 431:10C–207 is not necessarily restricted to rate making.[7]

■ However, as stated *supra,* this court has held that "no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." *Camara,* 67 Haw. at 215–16, 685 P.2d at 797. Allstate's contention—that the phrase "any standard or rating plan" refers only to rate making—would lead to the word "standard" being deemed superfluous. Therefore, we hold that HRS § 431:10C–207 applies to both "rating plan[s]" *and* "standard[s]," including underwriting standards, such that the Commissioner and the circuit court were correct in concluding that Allstate improperly denied Ms. Reinertson's application for insurance.

### B. *The Commissioner Did Not Engage In "Impromptu Rule Making."*

■ In concluding that HRS § 431:10C–207 applies to underwriting, the Commissioner did not create a new rule. Instead, he applied the existing rule in HRS § 431:10C–207 to the facts of Ms. Reinertson's complaint. Furthermore, even if the Commissioner's determination did constitute new agency policy, the Commissioner's creation of policy through adjudication is not an abuse of discretion unless " 'an agency's sudden

change of direction leads to undue hardship for those who had relied on past policy.' " *In re Hawaiian Elec. Co.,* 81 Hawai'i at 468, 918 P.2d at 570 (quoting *Union Flights, Inc. v. Administrator, FAA,* 957 F.2d 685, 688 (9th Cir.1992)). Allstate does not allege any undue hardship from the Commissioner's ruling; therefore, we hold that the Commissioner did not abuse his discretion and did not engage in impromptu rulemaking.

### C. *The Deputy Insurance Commissioner's Imposition Of A $3,000.00 Penalty Was Not An Abuse Of Discretion.*

■ In 1996, HRS § 431:10C–117(b) (1993 & Supp.1996) provided that "[a]ny person, in the capacity of a licensed or unlicenced motor vehicle insurer, general agent, subagent, solicitor, or other representative, who violates any provision of this article *shall* be assessed a civil penalty not to exceed $5,000 for each violation." [8] (Emphasis added.) In other words, HRS § 431:10C–117 *mandates* that Allstate be fined if it violated HRS § 431:10C–207; therefore, the Chief Deputy Insurance Commissioner had no discretion as to whether to impose a fine. HRS § 431:10C–117, however, does give the Chief Deputy Insurance Commissioner some discretion as to the amount of the fine: any amount less than $5,000.00 will satisfy the statute. The Chief Deputy Insurance Commissioner's imposition of a $3,000.00 fine satisfied the statutory requirements and, therefore, was not an abuse of discretion.

### IV. CONCLUSION

Based on the foregoing, we affirm the May 8, 2000 judgment of the first circuit court.

---

7. Additionally, Article 14 of HRS chapter 431, entitled "Rate Regulation," covers rate making far more extensively than the few provisions within Article 10C. *See* HRS § 431:14–101 (1993) ("The purpose of this article is to promote the public welfare by regulating insurance rates...."); HRS § 431:14–102 (1993 & Supp. 2003) (providing that Article 14 covers motor vehicle insurance). Therefore, reading HRS chapter 431 Articles 10 and 14 *in pari materia* suggests that the placement of HRS § 431:10C–207 within the "Rates and Administration" is not

dispositive in interpreting the phrase "standard or rating plan."

8. This portion of the statute has since been amended and now reads: "Any person, in the capacity of a licensed or unlicensed motor vehicle insurer, self-insurer, producer, or other representative, who violates any provision of this article shall be assessed a civil penalty not to exceed $5,000 for each violation." HRS § 431:10C–117(b) (Supp.2003).