91 P.3d 494

**PAUL'S ELECTRICAL SERVICE, INC., Appellant–Appellant,**

**v.**

**Nelson BEFITEL,[1] Director of the Department of Labor and Industrial Relations, Appellee–Appellee.**

**No. 23800.**

Supreme Court of Hawai'i.

June 10, 2004.

As Corrected July 14, 2004.

---

1. At the time this case arose, Gilbert S. Coloma–Agaran was the Director of the Department of Labor and Industrial Relations. Pursuant to Hawai'i Rules of Appellate Procedure, Rule 43(c) (2003) (entitled "Substitution of parties"), the current Director, Nelson Befitel, has been substituted for Gilbert S. Coloma–Agaran.

Richard M. Rand and Karen R. Tashima (Torkildson, Katz, Fonseca, Jaffe, Moore & Hetherington), Honolulu, on the briefs, for appellant-appellant Paul's Electrical Service, Inc.

Bruce W. Rudeen and Frances E.H. Lum, Deputy Attorneys General, on the briefs, for appellee-appellee Nelson Befitel, Director of the Department of Labor and Industrial Relations.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; with ACOBA, J., concurring separately.

Opinion of the Court by DUFFY, J.

Appellant-appellant Paul's Electrical Service, Inc. (Paul's Electrical) appeals from the judgment of the first circuit court, the Honorable Eden Elizabeth Hifo presiding, in favor of appellee-appellee Nelson Befitel (Director Befitel), Director of the Department of

Labor and Industrial Relations (DLIR). Specifically, Paul's Electrical appeals from the circuit court's final judgment, filed on September 18, 2000, affirming DLIR's decision to suspend Paul's Electrical from new government construction contracts for a period of three years.[2] Based on the following, we vacate the judgment of the circuit court and remand with instructions to enter judgment in favor of Paul's Electrical.

## I. *BACKGROUND*

Hawai'i Revised Statutes (HRS) chapter 104, entitled "Wages and Hours of Employees on Public Works," provides that any entity that contracts with the government to provide construction of public works must strictly follow certain labor practices. *See, e.g.,* HRS §§ 104–2 to 104–3 (1993 & Supp. 2003). HRS § 104–24 (Supp.1997) provides for an escalating series of penalties for violations of HRS chapter 104, culminating in a three-year suspension from performing government contract work after the contractor is found to have committed a third violation of HRS chapter 104.[3]

On February 9, 1995, Paul's Electrical received its first notice of violation [hereinafter,

---

**2.** The sentence of suspension was stayed pending this appeal.

**3.** The relevant statutory scheme was amended several times in the 1990s. Throughout the time period covered by the instant case, HRS chapter 104 contained two pertinent provisions: a provision on notifications of violations and a provision on violations and penalties. Each is addressed in turn.

1. *Notifications of violations*

Two of Paul's Electrical's violations occurred prior to July 1, 1996 (and one violation occurred from October 1995 to December 1996). HRS § 104–5(b) (Supp.1995), in effect until July 1, 1996, covered notifications of violations; effective July 1, 1996, HRS § 104–5 was repealed and these provisions were recodified as HRS § 104–23 (Supp.1995). HRS § 104–23 (Supp.1995) provided as follows:

**Notification of violation.** (a) When the department, either as a result of a report by a contracting agency or as a result of the department's own investigation, finds that a violation of this chapter or of the terms of the contract subject to this chapter has been committed, the department shall issue a notification of violation to the contractor or subcontractor involved.

(b) A notification of violation shall be final and conclusive twenty days after a copy was mailed to the violator, unless within the twenty-day period the violator files a written notice of appeal with the director.

(c) A hearing on the written notice of appeal shall be held by a hearings officer appointed by the director in conformance with chapter 91.

Hearings on appeal shall be held within sixty days of the notice of appeal and a decision shall be rendered by the director within sixty days after the conclusion of the hearing, stating the findings of fact and conclusions of law. The director may extend the due date for decision for good cause; provided that all parties agree.

In 1998, HRS § 104–23 was amended to substitute "hearings officer" for "director" in the final paragraph. 1998 Haw. Sess. L. Act 46, § 1 at 128.

This statutory section is substantively very similar to HRS § 104–5; the main difference is that pursuant to HRS § 104–5 (in effect until July 1, 1996), a contractor was notified of a first violation with a notification of violation but was notified of a second or third violation with a written complaint. Thus, based on HRS §§ 104–5 and 104–23, Paul's Electrical received a notification of violation for its first violation, a written complaint for its second violation, and a notification of violation for its third violation.

2. *Violations and penalties*

Prior to July 1, 1996, HRS § 104–5(b) provided penalties for violating HRS chapter 104. Pursuant to HRS § 104–5(b), the first offense carried a penalty "of not more than $1,000 for each offense." If a second or third violation occurred within two years of the first violation, and the appeals board found "that the person or firm has knowingly violated this chapter, the rules adopted thereunder, or the terms of the contract subject to this chapter," the appeals board was directed to order a penalty of ten per cent of the contract amount for a second violation and a three-year suspension from performing "any work on any public work of a governmental contracting agency" for a third violation. HRS § 104–5(b) (Supp.1995).

As discussed *supra,* HRS § 104–5 was repealed on July 1, 1996. The provisions in HRS § 104–5 covering violations and penalties were recodified as HRS § 104–24 (Supp.1995). HRS § 104–24 was in effect at the time Paul's Electrical committed its third violation, and provided:

**Violations; penalties.** (a) Where the department finds that a first violation of this chapter has been committed, the department shall assess a penalty of not more than $1,000 for each offense.

(b) Where a second or third violation occurs, whether on the same contract or another, within two years of the first violation, the director, after proper notice and opportunity for hearing, shall order the person or firm in violation:

(1) If it be a second violation, to pay a penalty of ten per cent of the contract amount; or

NOV] of HRS chapter 104 from DLIR. The NOV arose from DLIR's investigation of Paul's Electrical from November 1993 to October 1994. In response to this NOV, Paul's Electrical paid $1,623.36 in back wages and did not appeal DLIR's allegation that Paul's Electrical had violated HRS chapter 104. The NOV became final and conclusive twenty days after it was mailed to Paul's Electrical because Paul's Electrical did not appeal the notice. HRS § 104–5 (Supp.1995).

On June 26, 1996, DLIR filed a verified complaint alleging that Paul's Electrical committed a second violation of HRS chapter 104 within two·years of its first violation.[4] The complaint stated that Paul's Electrical had committed a second violation by underpaying its employees a total of $20,001.52; the complaint also stated that Paul's Electrical had since paid this amount to the affected employees. This verified complaint, representing Paul's Electrical's second violation of HRS chapter 104 (and referred to as "NOV # 2" by the circuit court), arose from DLIR's investigation of Paul's Electrical from April 1995 to November 1995 (*i.e.,* within two years of the first violation). The complaint sought $535,224.90, representing ten percent of the total contract amount ($5,352,249.00), as a penalty for a second violation of HRS chapter 104 as mandated by HRS § 104–5(b). On February 24, 1998, the Labor and Industrial Relations Appeals Board (Appeals Board) held a hearing on DLIR's complaint; the Appeals Board did not issue its decision and order, however, until March 18, 1999. The Appeals Board found that Paul's Electrical had committed a second violation, but that the violation was not committed "knowingly" such that no penalty (apart from the $20,001.52 in underpayments) could be imposed under the then-existing version of HRS § 104–5(b).

While the Appeals Board proceedings were pending on the second violation, DLIR conducted a third investigation of Paul's Electrical. The investigation began in October 1996 and ended in March 1997 and covered the period from August 1995 to January 1997. The investigation uncovered further violations of HRS § 104, and on March 24, 1997, DLIR sent Paul's Electrical a letter requesting the payment of $304.23 in back wages. This letter did not specifically indicate that Paul's Electrical had violated HRS chapter 104; instead, the letter stated that the investigation "revealed that four employees were paid less than the prevailing wage rate[.]" The letter did not include information on Paul's Electrical's appeal rights and did not indicate that DLIR intended to impose any penalty for the underpayments. Instead, the letter stated that "we request that all back wages be paid no later than **April 14, 1997.**" Paul's Electrical immediately paid the $304.23.

DLIR did not issue an NOV for the third violation (the wage discrepancy of $304.23) until April 7, 1999—over two years after the completion of the investigation revealing the third violation, but less than three weeks after the Appeals Board issued its decision and order on Paul's Electrical's second violation. The NOV for the third violation indicated that a finding of a third violation carried with it a penalty of a three-year suspension.

Director Befitel argues that the decision to wait for two years after the completion of the investigation to issue the third NOV was reasonable under the circumstances: he argues that DLIR did not know whether to categorize this violation as a third violation or a second violation (with different penalties

(2) If it be a third violation, to be suspended as prescribed in section 104–25.

HRS § 104–25 (Supp.1997) provided, in part, that the suspension shall prevent a person or firm "from doing any work on any public work of a governmental contracting agency for a period of three years[.]"

HRS § 104–24 has since been amended; among other changes, the amendments changed the calculation of penalties and removed the requirement that the violator "knowingly" violate the chapter. *See* HRS § 104–24 (Supp.2003).

4. As discussed in note 3, *supra,* HRS § 104–5(b) (Supp.1995) provided that the director of DLIR would serve a written complaint upon the violating person or firm for a second or third violation. In the instant case, however, the parties and the circuit court note that Paul's Electrical received notice of the second violation on January 17, 1996, followed by the written complaint on June 26, 1996.

for a second versus a third violation) until the completion of DLIR's proceedings on the second violation. Director Befitel further argues that Paul's Electrical had actual notice of the third violation in March 1997 and that Paul's Electrical has not demonstrated any prejudice from DLIR's delay. Paul's Electrical, on the other hand, argues that the two-year delay rendered the April 7, 1999 notice of violation a nullity. Paul's Electrical contends that it need not demonstrate prejudice because DLIR is obligated to issue notifications of violations promptly. The relevant statute, HRS § 104–23 (Supp.1995),[5] does not provide a specific time frame in which an NOV must be issued.

Paul's Electrical appealed from the third NOV. On September 22, 1999, the Appeals Board issued its Decision and Order affirming the third violation and the penalty of a three-year suspension from government contract work. On September 23, 1999, Paul's Electrical appealed to the first circuit court; on September 8, 2000, the circuit court affirmed DLIR's decision and order. The circuit court ruled that DLIR's decision to wait to issue the third NOV until the proceedings surrounding the second NOV had been completed was reasonable under the circumstances, although a two-year delay in other circumstances would be unreasonable. The circuit court concluded that "[i]f there were evidence that such delay had prejudiced Paul's in this case, that would constitute grounds for reversal. Absent such evidence, the Court cannot say that the delay caused by awaiting the decision following Paul's own appeal of NOV # 2 was arbitrary, capricious, or in violation of Section 104–23 as unreasonable."

## II. *STANDARDS OF REVIEW*

### A. *Review Of Administrative Agencies' Findings and Conclusions*

#### 1. **Secondary appeals**

Review of a decision made by the circuit court upon its review of an agency's deci-

sion is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) [ (1993) ] to the agency's decision.

*Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan,* 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting *Bragg v. State Farm Mutual Auto. Ins.,* 81 Hawai'i 302, 304, 916 P.2d 1203, 1205 (1996)) (alteration in original). HRS § 91–14, entitled "Judicial review of contested cases," provides in relevant part:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"[U]nder HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." *In re Hawaiian Elec. Co.,* 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996) (citing *Outdoor Circle v.*

---

5. As quoted in note 3, *supra,* HRS § 104–23 (Supp.1995) provided in relevant part:

**Notification of violation.** (a) When the department, either as a result of a report by a contracting agency or as a result of the department's own investigation, finds that a violation

of this chapter or of the terms of the contract subject to this chapter has been committed, the department shall issue a notification of violation to the contractor or subcontractor involved.

*Harold K.L. Castle Trust Estate,* 4 Haw.App. 633, 638–39, 675 P.2d 784, 789 (1983)).

## 2. Deference to administrative agencies

HRS § 91–14(g)(6) provides that an agency's exercise of discretion will not be disturbed unless "[a]rbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion." In the past, this court has utilized various tests and standards in implementing this statutory provision. *See, e.g., In re Wai'ola O Moloka'i, Inc.,* 103 Hawai'i 401, 420, 83 P.3d 664, 683 (2004) ("This court's review is ... qualified by the principle that the agency's decision carries a presumption of validity[,] and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." (Citations and block quote formatting omitted.) (Alterations in original.)). We take this opportunity to clarify the standard of review for agencies' discretionary determinations.

Administrative agencies are created by the legislature, and the legislature determines the bounds of the agency's authority. *See Morgan v. Planning Dept., County of Kauai,* 104 Hawai'i 173, 184, 86 P.3d 982, 993 (2004) (" 'An administrative agency can only wield powers expressly or implicitly granted to it by statute.' " (Quoting *TIG Ins. Co. v. Kauhane,* 101 Hawai'i 311, 327, 67 P.3d 810, 826 (App.2003).)). Thus, before we can determine whether an agency abused its discretion pursuant to HRS § 91–14(g)(6), we must determine whether the agency determination under review was the type of agency action within the boundaries of the agency's delegated authority. To the extent that the legislature has authorized an administrative agency to define the parameters of a particular statute, that agency's interpretation should be accorded deference. *See, e.g., In re Gray Line Hawai'i Ltd.,* 93 Hawai'i 45, 53,

995 P.2d 776, 784 (2000) (discussing deference to Public Utilities Commission's determination of "just and reasonable" rates); *Hyatt Corp. v. Honolulu Liquor Comm'n,* 69 Haw. 238, 239, 738 P.2d 1205, 1206 (1987) ("Because of the exceptionally broad authority granted to the Commission by statute [and] the substantial deference to which the Commission's interpretation of the statute is entitled ..., we affirm."). However, if a statute does not grant an agency discretion with which to interpret or implement that statute, then that agency's legal conclusions will be reviewed *de novo. See, e.g., Allstate Ins. Co. v. Schmidt,* 104 Hawai'i 261, 88 P.3d 196 (2004).[6]

The standard of review for decisions of administrative agencies therefore consists of two parts: first, an analysis of whether the legislature empowered the agency with discretion to make a particular determination; and second, if the agency's determination was within its realm of discretion, an analysis of whether the agency abused that discretion (or whether the agency's action was otherwise "arbitrary, or capricious, or characterized by ... [a] clearly unwarranted exercise of discretion," HRS § 91–14(g)(6)). If an agency determination is not within its realm of discretion (as defined by the legislature), then the agency's determination is not entitled to the deferential "abuse of discretion" standard of review. *See, e.g., Allstate,* 104 Hawai'i at 265–66, 88 P.3d at 200–01. If, however, the agency acts within its realm of discretion, then its determination will not be overturned unless the agency has abused its discretion.

The boundaries of an agency's discretion are established by the legislature, *see Morgan v. Planning Dept., County of Kauai,* 104 Hawai'i at 184, 86 P.3d at 993, and these statutory boundaries will likely assist a reviewing court in defining "discretion" when that court examines an agency's action for an

---

**6.** In *Allstate,* this court analyzed the Department of Commerce and Consumer Affairs' Insurance Commissioner's interpretation of HRS § 431:10C–207 (1993), which prohibits discriminatory practices in motor vehicle insurance policies. In its analysis, the court gave no deference to the Commissioner's interpretation, but instead conducted an independent review of the statute. *Allstate,* 104 Hawai'i at 265–66, 88 P.3d at 200–

01. Although the Commissioner has expertise in insurance matters, *see, e.g.,* HRS § 431:10C–407(a) (Supp.2003) ("The commissioner shall establish classifications of eligible person and uses for ... the joint underwriting plan[.]"), the legislature did not grant the Commissioner discretion to interpret HRS § 431:10C–207, such that the Commissioner's legal conclusions regarding that statute were subject to *de novo* review.

abuse of discretion. For example, in *In re Hawaii Elec. Light Co., Inc.*, 60 Haw. at 636–37, 594 P.2d at 620–21, we applied the "just and reasonable" language of HRS § 269–16 to the PUC's rate determination.[7] In mandating that rates be "just and reasonable," the legislature established the boundaries of the PUC's discretion; by definition, rates that are unjust and unreasonable are outside the boundaries of the legislature's delegated authority (such that an "unjust and unreasonable" rate is an abuse of discretion). Thus, in the context of PUC decisions, the "unjust and unreasonable" language is consistent with HRS § 91–14(g)(6).

In the past, this court has used language suggesting that the standard of review for an administrative agency's discretionary determination is something other than the abuse of discretion standard appearing in HRS § 91–14(g)(6). For example, in *In re Wai'ola O Moloka'i, Inc.*, 103 Hawai'i at 420, 83 P.3d at 683, we stated: "This court's review is . . . qualified by the principle that the agency's decision carries a presumption of validity[,] and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." (Citations and block quote formatting omitted.) (Alterations in original.) Two aspects of this language have led to confusion: first, the suggestion that an agency's action will only be overturned if "unjust and unreasonable"; and second, the suggestion that the appellant bears a "heavy burden" to justify overturning an agency's determination. We address each in turn.

### a. "Unjust and unreasonable"

The "unjust and unreasonable" language represents one application of the abuse of

discretion standard found in HRS § 91–14(g)(6). This language was first discussed in *In re Kauai Elec. Div. of Citizens Utils. Co.*, 60 Haw. 166, 181, 590 P.2d 524, 535 (1978) and *In re Hawaii Elec. Light Co., Inc.*, 60 Haw. 625, 630, 594 P.2d 612, 617 (1979). In *In re Hawaii Elec. Light· Co., Inc.*, this court stated:

> In order to preserve the function of administrative agencies *in discharging their delegated duties* and the function of this court in reviewing agency determinations, a presumption of validity is accorded to decisions of administrative bodies *acting within their sphere of expertise* and one seeking to upset the order bears "the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences." *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 602, 64 S.Ct. 281, 288, 88 L.Ed. 333 (1944)[.]

(Emphases added.)[8] Thus, our deference to administrative agencies' legal conclusions is limited to those conclusions within the agency's delegated realm of expertise (*i.e.*, to those conclusions made pursuant to the legislature's authorization).

■ This court has frequently used the "unjust and unreasonable" language as a proxy for the abuse of discretion standard. *See, e.g., In re Wai'ola O Moloka'i, Inc.*, 103 Hawai'i at 420, 83 P.3d at 683. However, the "unjust and unreasonable" language has particular applicability only in the context of decisions of the Public Utilities Commission (PUC) made pursuant to HRS § 269–16(a) (Supp.2003), which provides that "[a]ll rates . . . shall be just and reasonable and shall be filed with the public utilities commission."

---

7. In *In re Hawaii Elec. Light Co., Inc.*, 60 Haw. at 636–37, 594 P.2d at 620–21, we applied the clearly erroneous standard to the PUC's rate determination. However, we have since held that the clearly erroneous standard applies to an agency's findings of fact, while the *de novo* standard applies to an agency's conclusions of law and the abuse of discretion standard applies to those determinations within an agency's sphere of expertise. *See, e.g., In re Gray Line Hawai'i Ltd.*, 93 Hawai'i 45, 57, 995 P.2d 776, 788 (2000); *Camara v. Agsalud*, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984).

8. In *Kauai Elec.*, the first Hawai'i case to mention the "unjust and unreasonable" language, this court stated: "In regard to the setting of rates, HRS § 269–16 requires that all rates and charges must be 'just and reasonable.' The 'just and reasonable' standard has been upheld as constitutionally permissible, even though no specific formula for determining that which is just and reasonable has been statutorily set." *Kauai Elec.*, 60 Haw. at 181, 590 P.2d at 535 (citing *Hope Natural Gas Co.*, 320 U.S. at 600, 64 S.Ct. 281). *Kauai Elec.*, and the application of HRS § 269–16, are discussed more fully *infra*.

*See In re Kauai Elec. Div. of Citizens Utils. Co.*, 60 Haw. 166, 181, 590 P.2d 524, 535 (1978) ("In regard to the setting of rates, HRS § 269–16 requires that all rates and charges must be 'just and reasonable.'"). The language of HRS § 269–16(a) clarifies the bounds of the PUC's discretion, and as such assists a reviewing court in determining whether the PUC abused its discretion in a particular case. The "unjust and unreasonable" language does not represent a separate standard of review, but rather represents the application of the abuse of discretion standard to the statutory scheme underlying the PUC's rate-making powers. Thus, the "unjust and unreasonable" language represents one application of the more general abuse of discretion standard of review; this language does not and will not apply to discretionary decisions of administrative agencies outside of the PUC ratemaking context. Instead, the standard of review, as provided by HRS 91–14(g)(6), is abuse of discretion.

### b. "Heavy burden"

In the past, we have also held that the party seeking to overturn an agency's action "has the heavy burden of making a convincing showing that the decision is invalid[.]" *Id.* This is correct—an appellant does have a heavy burden—but it is imprecise insofar as it suggests that the standard of review is something different (or more rigorous) than abuse of discretion. Agency determinations, even if made within the agency's sphere of expertise, are not presumptively valid; however, an agency's discretionary determinations are entitled to deference, and an appellant has a high burden to surmount that deference:

> The abuse of discretion standard applies to all discretionary decisions of lower tribunals. Discretion is a flexible concept:
>
> > [w]hen invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed

by the reason and conscience of the judge to a just result.

> [*Booker v. Midpac Lumber Co.*, 65 Haw. 166, 172, 649 P.2d 376, 380 (1982) (quoting *Langnes v. Green*, 282 U.S. 531, 541 [51 S.Ct. 243, 75 L.Ed. 520] (1931)).]
>
> . . . .
>
> A strong showing is required to establish an abuse, and each case must be decided on its own facts. . . . The most commonly repeated definition was first articulated in *State v. Sacoco* [, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961) ]: "[G]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." [9] This definition is appropriate because it highlights the great deference appellate courts generally give to discretionary decisions, and conveys the high burden of arbitrariness or caprice which an appellant must meet to overcome that deference.

Michael J. Yoshii, *Appellate Standards of Review in Hawaii*, 7 U. Haw. L.Rev. 273, 292–93 (1985) (footnotes omitted) (some alterations in original and some added). Thus, an appellant seeking to overturn an agency's determination made within the agency's sphere of expertise has a high burden to demonstrate that the agency abused its discretion. A "high burden," a "heavy burden," and "deference" are all ways of expressing this same concept: that a determination made by an administrative agency acting within the boundaries of its delegated authority will not be overturned unless "arbitrary, or capricious, or characterized by . . . [a] clearly unwarranted exercise of discretion." (HRS § 91–14(g)(6)).

■ In summary, when reviewing a determination of an administrative agency, we first decide whether the legislature granted the agency discretion to make the determination being reviewed. If the legislature has granted the agency discretion over a particular matter, then we review the agency's action pursuant to the deferential abuse of discretion standard (bearing in mind the leg-

---

9. *See also Southern Foods Group, L.P. v. State, Dept. of Educ.*, 89 Hawai'i 443, 452, 974 P.2d 1033, 1042 (1999) (applying the same abuse of discretion standard to agency determinations).

islature determines the boundaries of that discretion). If the legislature has not granted the agency discretion over a particular matter, then the agency's conclusions are subject to *de novo* review.

### 3. The administrative agency's conclusions of law and findings of fact

Pursuant to HRS § 91–14(g), an agency's conclusions of law are reviewed *de novo, Camara v. Agsalud,* 67 Haw. 212, 216, 685 P.2d 794, 797 (1984), while an agency's factual findings are reviewed for clear error, HRS § 91–14(g)(5).

### B. *Review Of Circuit Court's Conclusions of Law*

■ A circuit court's conclusions of law are subject to *de novo* review. *Troyer v. Adams,* 102 Hawai'i 399, 409, 77 P.3d 83, 93 (2003).

### C. *Application To This Case*

First, the circuit court's conclusion that there is a "reasonableness" standard in HRS § 104–23 is a conclusion of law made by the circuit court, and as such is subject to *de novo* review. *Id.*

■ Second, DLIR's determination that its actions were reasonable is not entitled to deference. The legislature did not empower DLIR to interpret HRS § 104–23; instead, HRS § 104–23 sets forth the procedural requirements that DLIR must follow. DLIR does not have any special expertise in interpreting or implementing these procedural requirements. *Cf. Allstate,* 104 Hawai'i at 265–66, 88 P.3d at 200–01 (declining to defer to the Insurance Commissioner's interpretation of HRS § 431:10C–207). Therefore, DLIR's interpretation as to what is reasonable is not accorded deference.

Third, the conclusion (reached by both DLIR and the circuit court) that DLIR's actions were reasonable under the circumstances is a conclusion of law subject to *de novo* review.

## III. *DISCUSSION*

### A. *The Circuit Court Correctly Determined That DLIR Must Issue Notifications Of Violations Within A Reasonable Time.*

■ HRS § 104–23 does not provide a time frame in which DLIR's director must issue a notification of violation. The circuit court ruled that, in the absence of an express time frame, DLIR must issue notifications of violations within a reasonable time. We agree. This court has imported the reasonableness standard into other situations in which the time frame was not specified. *See State v. Sherman,* 70 Haw. 334, 340–41, 770 P.2d 789, 793 (1989) ("Our [Hawai'i Rules of Penal Procedure] Rule 12.1(b) does not set a specific time limit for the prosecution's disclosure.... Obviously, therefore, ... the prosecution is obliged, within a reasonable time, to make available the specifics required by the rule, and obviously also, the defense, within a reasonable time ..., must provide the information which the rule requires be given to the prosecution."). The reasonableness restriction serves the same goals as a more rigid statute of limitations, *see Mauian Hotel, Inc. v. Maui Pineapple Co.,* 52 Haw. 563, 566, 481 P.2d 310, 313 (1971) (stating that a statute of limitations "precludes stale claims where the other party must gather evidence after time has dissipated memories, documents and real evidence."). Paul's Electrical is correct that there must be *some* limit on the time in which DLIR can issue an NOV; in the absence of a strict deadline provided by the legislature, the circuit court's "reasonableness" test is correct.

### B. *DLIR's Failure to Issue a Notification of Violation For Two Years Was Unreasonable.*

■ Director Befitel argues that the two-year delay in the instant case was reasonable under the circumstances. Director Befitel notes that Paul's Electrical had actual notice of the third violation and did not allege any prejudice as a result of the delay. Director Befitel further argues that DLIR did not know that a second violation had occurred until the Appeals Board issued its decision on the second NOV, such that DLIR did not know whether the investigation completed in

March 1997 could have been a basis for issuance of a third NOV. The circuit court concluded that DLIR's actions were reasonable given that DLIR issued the third NOV less than three weeks after the Appeals Board issued its decision on the second NOV.

We disagree. For purposes of issuing an NOV—*i.e.*, for purposes of determining *whether a violation occurred*—the existence of prior violations is irrelevant. The process of issuing an NOV is the same regardless of whether the contractor has committed zero, one, or two prior violations. The penalty assessed will vary depending on whether the contractor has committed prior violations; however, there is no need to delay proceedings to determine whether a violation exists because of uncertainty about the potential penalty to be imposed.

Director Befitel is correct that DLIR could not impose a three-year suspension until after a finding that Paul's Electrical has violated HRS chapter 104 for a third time within the requisite time period. However, DLIR does not need to wait until the appeal on the second NOV has been completed before determining whether another violation took place. DLIR can begin proceedings on what it believes to be the third NOV before the appeal on the second NOV has been completed.[10] If DLIR finds that a third violation has occurred, it can stay the penalty of suspension pending the outcome of the proceedings

on the second NOV. If the second NOV is overturned on appeal, DLIR can simply change the penalty to reflect the negation of the second NOV. The penalties for violating HRS chapter 104 are mandated by statute; thus, once a contractor is found to have committed a second or third violation, DLIR has no discretion as to whether to impose a ten percent penalty for a second violation or a three-year suspension for a third violation. There is no need, therefore, to wait for proceedings on the second NOV to be completed before beginning proceedings on the third NOV.

Because DLIR did not issue the third NOV within a reasonable time, the third NOV was invalid. Consequently, the circuit court erred in affirming the Appeals Board's decision and order.[11]

### IV. CONCLUSION

Based on the foregoing, we vacate the first circuit court's final judgment, filed on September 18, 2000, and remand with instructions to enter judgment in favor of Paul's Electrical.

Concurring Opinion by ACOBA, J.

I agree with the result reached in this case. However, after the adoption of HRS § 91–14(g)[1], I do not find any viability in

---

10. The same is true, of course, if DLIR wishes to issue a contractor a second NOV while a first NOV is on appeal.

11. We note that HRS § 91–14(g) provides that a reviewing court may only reverse or modify an agency's decision and order "if the substantial rights of the petitioners may have been prejudiced[.]" Director Befitel contends that the circuit court's ruling should be affirmed because Paul's Electrical did not allege that it was prejudiced from the two-year delay in issuing the third NOV. DLIR and the circuit court imply that because Paul's Electrical's *legal defense* of the third NOV was not prejudiced by the delay, no prejudice existed. Director Befitel's interpretation of "prejudice" is too narrow. Paul's Electrical has consistently argued that the penalty of a three-year suspension from government contract work was improper. The third NOV issued by DLIR was invalid; if DLIR's decision and order is allowed to stand, Paul's Electrical will be penalized for an unlawful agency action. Thus, there is a direct connection between the unlawful

agency action and the prejudice to the petitioner. Therefore, our reversal of DLIR's decision and order is proper pursuant to HRS § 91–14(g).

1. HRS § 91–14, entitled "Judicial Review of Contested Cases," provides in relevant part that:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
(1) In *violation of constitutional or statutory provisions;* or
(2) In *excess of the statutory authority* or jurisdiction of the agency; or
(3) *Made upon unlawful procedure;* or
(4) *Affected by other error of law;* or
(5) *Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;* or

qualifying review of agency decisions "by the principle that the agency's decision carries a presumption of validity[,] and that appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." Majority opinion at 417, 91 P.3d at 499 (quoting *In re Wai'ola O Moloka'i, Inc.*, 103 Hawai'i 401, 420, 83 P.3d 664, 683 (2004)).

As sometimes happens in the law, the misapplication of a standard is perpetuated by its repetition. The fact that the terms "presumption" "heavy burden" "convincing showing" and "unjust and unreasonable consequences" are not found anywhere in Hawai'i Revised Statutes (HRS) § 91–14(g) is not accidental. The grounds set forth in HRS § 91–14(g) establish the authority of the appellate courts to remand, reverse, or modify an agency decision "if the substantial rights of the petitioners may have been prejudiced[.]"

This authority, proceeds from specific standards referable to agency action. For example, judicial intervention is permitted if the agency exceeded statutory authority, engaged in "unlawful procedure", committed "error of law," was "clearly erroneous," in view of the substantial evidence or was "arbitrary and capricious." HRS § 91–14(g). In light of these grounds, I must conclude that there is little gain in according "deference" to agency decisions, *see* majority opinion at 417, 91 P.3d at 499, in terms other than those expressly defined and stated in HRS § 91–14(g). The "deference" to be given agency decisions already inheres in the specific enumerated grounds.

I do however, concur with the majority's clarification that "the 'unjust and unreasonable' language has particular applicability

only in the context of decision of the Public Utilities Commission (PUC) made pursuant to HRS § 269–16(a) (Supp.2003), which provides that '[a]ll rates ... shall be just and reasonable and shall be filed with the public utilities commission.'" Majority opinion at 418–19, 91 P.3d at 500–01.

Such a standard is not relevant to the present case. The history of the standard plainly demonstrates its inapplicability. *See Nakamura v. State*, 98 Hawai'i 263, 274–75, 47 P.3d 730, 741–743 (2002) (Acoba, J., dissenting); *In re Application of Kauai Elec. Div. of Citizens Util. Co.*, 60 Haw. 166, 181, 590 P.2d 524, 534 (1978)(hereinafter *Kauai Elec.*). The words of the standard are taken directly from the text of HRS § 269–16, which pertains to energy rate adjustments and hence, were only intended to implement that statute.[2] *See Kauai Elec.*, 60 Haw. at 181, 590 P.2d at 534; *Nakamura*, 98 Hawai'i at 274–75, 47 P.3d at 741–743 (Acoba, J., dissenting). In *Kauai Elec.* this court concluded that the standard to be applied in energy rate adjustments is whether the order in issue was "just and reasonable" because HRS § 269–16, expressly "requires that all rates and charges must be 'just and reasonable.'" *Nakamura*, 98 Hawai'i at 275, 47 P.3d at 742 (quoting *Kauai Elec.* at 181, 590 P.2d at 535).

However, the "unjust and unreasonable" language, has heretofore, crept into various non-rate-making cases as an independent standard of appellate review. *Nakamura*, 98 Hawai'i at 275, 47 P.3d at 742 (Acoba, J., dissenting); *see e.g., In re Gray Line Hawai'i Ltd.*, 93 Hawai'i 45, 53, 995 P.2d 776, 784 (2000) *Korean Buddhist Dae Won Sa Temple v. Sullivan*, 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998); *Kahana Sunset Owners Ass'n v. County of Maui*, 86 Hawai'i 66,

---

(6) *Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.*
(Emphases added).

**2.** The *Kauai Electric* court "adopted the standard set forth in *[Federal Power Commission v. Hope Natural Gas*, 320 U.S. 591, 602, 64 S.Ct. 281, 88 L.Ed. 333 (1944) ]*" in which the United States Supreme Court "construed a similar federal statute, 15 U.S.C. § 717c,[ ] requiring that rates set by the Federal Power Commission be 'just and

reasonable.'" *Nakamura*, 98 Hawai'i at 275, 47 P.3d at 742 (Acoba, J., dissenting). In that case, the Supreme Court "relied specifically upon the *language of the statute* in declaring that when the Commission's order is challenged in the courts, the question is whether that order 'viewed in its entirety' meets the requirements of the Act. *Hope Natural Gas*, 320 U.S. at 602, 64 S.Ct. 281." *Nakamura*, 98 Hawai'i at 275, 47 P.3d at 742 (Acoba, J., dissenting) (emphasis added) (footnote and internal quotation marks omitted).

68, 947 P.2d 378, 380 (1997); *Outdoor Circle v. Harold K.L. Castle Trust Estate,* 4 Haw. App. 633, 639, 675 P.2d 784, 789 (1983). Hence, I agree that "[t]he 'unjust and unreasonable' language does not represent a separate standard of review," majority opinion at 419, 91 P.3d at 501, but rather applies to HRS § 269–16 only.

I cannot agree, however, that the unjust and unreasonable standard is a species of the abuse of discretion standard. *See* majority opinion at 419, 91 P.3d at 501 ("[T]he 'unjust and unreasonable' language represents one application of the more general abuse of discretion standard of review."). The former is a statutory standard binding upon the agency; the latter is a standard circumscribing ˙our review of the agency's application of the statutory standard.

For similar reasons the retention of "high burden," and "heavy burden" as another way "of expressing . . . that a determination made by an [administrative] agency . . . will not be overturned unless "arbitrary, or capricious, or characterized by . . . [a] clearly unwarranted exercise of discretion (HRS § 91–14(g)(6))" majority opinion at 419, 91 P.3d at 501, will cloud the issue. Aside from being "imprecise," the terms "high burden", and "heavy burden" beg the question as to what the burden relates to. If "high burden" or "heavy burden" are used, they may reasonably but mistakenly be perceived as establishing something more than the requirement that the action of the agency be "arbitrary, or capricious or characterized by . . . unwarranted exercise of discretion" to warrant judicial action. HRS § 91–14(g)(6). With all due respect, it would seem more propitious to employ the terms set forth in HRS § 91–14(g)(6) and say what is meant to be said.