**Electronically Filed
Supreme Court
SCAP-22-0000371
24-SEP-2024
11:47 AM
Dkt. 44 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

LINDA K. ROSEHILL, Trustee of the Linda K. Rosehill Revocable Trust dated August 29, 1989, as amended; MARK B. CHESEBRO and CAROLINE MITCHEL, Trustees of the First Amendment and Restatement of the 1999 Mark Brendan Chesebro and Caroline Mitchel Revocable Trust U/D/T dated January 6, 1999; SOMTIDA S. SALIM, Trustee of the Somtida Salim Living Trust dated February 15, 2007; TODD M. MOSES; PSALMS 133 LLC; JOHN T. FENTON, Trustee of the John T. Fenton Revocable Trust dated February 27, 2014; FRANCES T. FENTON, Trustee of the Frances T. Fenton Revocable Trust dated February 27, 2014; DIRK AND LAURA BELLAMY HAIN, Trustees of the Bellamy-Hain Family Trust dated September 13, 2017; ROBERT STOPPEK; LAURA B. STOPPEK; NEIL ALMSTEAD; DOYLE LAND PARTNERSHIP; CHARLES E. and NANCY E. ROSEBROOK; MICHAEL CORY and EUGENIA MASTON; PAUL T. and DELAYNE M. JENNINGS, Trustees of the Jennings Family Revocable Trust dated January 5, 2010; MAGGHOLM PROPERTIES LLC; NETTLETON S. and DIANE E. PAYNE, III, Appellants-Appellees,

vs.

STATE OF HAWAI'I, LAND USE COMMISSION,
Appellee-Appellant,

and

COUNTY OF HAWAI'I,
Appellee-Appellee.

SCAP-22-0000371

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CAAP-22-0000371; CIV. NO. 3CCV-21-0000178)

September 24, 2024

RECKTENWALD, C.J., McKENNA, EDDINS, AND GINOZA, JJ., AND
CIRCUIT JUDGE CASTAGNETTI, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.   INTRODUCTION

Hawai'i land use is broadly guided by state law.  The counties play an important role, however.  They propose land use maps to the State, implement the land use scheme through zoning ordinances, and carve out permissible exceptions to the State's broad scheme.  In 2019, the County of Hawai'i passed an ordinance banning short-term vacation rentals in the agricultural district on lots built after 1976.  The Rosehill Petitioners challenge the County's ordinance, seeking permission to use farm dwellings as short-term vacation rentals.  We hold that farm dwellings in the agricultural district may not be used as short-term vacation rentals because such relief would undermine the purpose of the agricultural district.

In brief summary, Hawai'i Revised Statutes (HRS) § 205-4.5 (2017) details all permissible uses of land in the agricultural district.  HRS § 205-4.5(a)(4) (2017) defines a "farm dwelling," a permissible use, as "a single-family dwelling

2

located on and used in connection with a farm . . . or where agricultural activity provides income to the family occupying the dwelling." In 2019, the County of Hawai'i amended its zoning code to regulate the use of short-term vacation rentals by requiring owners to register and obtain nonconforming use certificates from the County Planning Department. Under the ordinance, the County may only issue a nonconforming use certificate for land in the agricultural district where the lot existed before June 4, 1976. Anyone operating a short-term vacation rental without first obtaining a nonconforming use certificate is subject to criminal prosecution and administrative penalties.

After the ordinance was enacted, the Rosehill Petitioners, who all own lots created after June 4, 1976, sought nonconforming use certificates. The County denied the certificates, and the Rosehill Petitioners appealed to the County Board of Appeals. The County and the Rosehill Petitioners agreed to stay the appeal and each file a petition with the Land Use Commission (LUC), seeking to establish whether the County's denial was proper under state law. The LUC ruled on the County's petition and found that farm dwelling use and short-term vacation rental use are not compatible uses — i.e., that farm dwellings cannot be used as short-term vacation

rentals.  The LUC also concluded that the Rosehill Petition was speculative and hypothetical.

The Rosehill Petitioners appealed to the circuit court, which reversed the LUC.  The circuit court held that farm dwelling use and short-term vacation rental use are "not incompatible."  It compared the County ordinance to HRS § 205-4.5(a) and held that a dwelling can simultaneously meet the definition of a farm dwelling and a short-term vacation rental.

The LUC appealed to the Intermediate Court of Appeals (ICA), where the case was extensively briefed.  While the case was pending before the ICA, this court issued In re Kanahele, which held that declaratory orders entered by the LUC have the "same status" for judicial review as orders in contested cases. 152 Hawai'i 501, 512, 526 P.3d 478, 489 (2023).  Here, that would mean that the Rosehill Petitioners should have appealed directly to this court from the LUC order (rather than, as they did to the circuit court).  The Rosehill Petitioners then applied for transfer, which we granted.

This case raises several questions.  Preliminarily, there are two procedural issues raised by Kanahele: (1) Can this case be transferred from the ICA to this court, nunc pro tunc to June 18, 2021, the date this appeal was initially filed in the circuit court; and (2) if the case can be transferred nunc pro

4

tunc, what record may the Court consider, and which party should have the burden of showing error?  There are also two substantive issues: (3) Could the LUC grant the declaratory order to the County while denying the Rosehill Petition, and (4) can a farm dwelling in the state agricultural district be used as a short-term vacation rental?

We hold as follows: (1) yes, we may transfer the case nunc pro tunc because it is within the statutory and inherent power of this court to do so and would accord with our longstanding policy to hear cases on the merits; (2) this court can use the entirety of the record (though the circuit court's findings of fact and conclusions of law have no weight), and the Rosehill Petitioners have the burden of showing that the LUC order was arbitrary and capricious; (3) yes, the LUC properly granted the declaratory order for the County while denying the Rosehill Petition because the two parties were not similarly situated; and (4) no, a farm dwelling in the agricultural district may not be used as a short-term vacation rental because that use does not accord with the agricultural district's purpose.

We therefore vacate the circuit court's judgment and affirm the LUC's declaratory order.

## II. BACKGROUND

### A. Statutory Background

HRS § 205-4.5, originally enacted as Act 199 in 1976, governs the LUC and agricultural lands:

> **205-4.5 Permissible uses within the agricultural districts.**
>
> (a) Within the agricultural district, all lands with soil classified by the land study bureau's detailed land classification as overall (master) productivity rating class A or B and for solar energy facilities, class B or C, shall be restricted to the following permitted uses:
>
> . . . .
>
> > (4) Farm dwellings, employee housing, farm buildings, or activities or uses related to farming and animal husbandry. "Farm dwelling", as used in this paragraph, means a single-family dwelling located on and used in connection with a farm, including clusters of single-family farm dwellings permitted within agricultural parks developed by the State, or where agricultural activity provides income to the family occupying the dwelling[.]
>
> (b) Uses not expressly permitted in subsection (a) shall be prohibited, except the uses permitted as provided in sections 205-6 and 205-8, and construction of single-family dwellings on lots existing before June 4, 1976. Any other law to the contrary notwithstanding, no subdivision of land within the agricultural district with soil classified by the land study bureau's detailed land classification as overall (master) productivity rating class A or B shall be approved by a county unless those A and B lands within the subdivision are made subject to the restriction on uses as prescribed in this section and to the condition that the uses shall be primarily in pursuit of an agricultural activity.
>
> > Any deed, lease, agreement of sale, mortgage, or other instrument of conveyance covering any land within the agricultural subdivision shall expressly contain the restriction on uses and the condition, as prescribed in this section that these restrictions and conditions shall be encumbrances running with the land until such time that the land is reclassified to a land use district other than agricultural district.

HRS § 205-6 (2017) allows counties to "permit certain unusual and reasonable uses within agricultural and rural districts other than those for which the district is classified."

**B.    Zoning Code Background and County Planning Procedure**

The County of Hawai'i zoning code regulates land development and use within the County.  See Hawai'i County Code (HCC or the Code) § 25-1-2(b).  In April 2019, the County amended its zoning code to regulate the use of short-term vacation rentals by requiring the owner to register and obtain a nonconforming use certificate from the Planning Department.  HCC §§ 25-4-16, 25-4-16.1, Hawai'i County Ordinance, No. 18-114 (2018).  Anyone that operates a short-term vacation rental without obtaining a nonconforming use certificate may be subject to criminal prosecution and administrative penalties.  HCC §§ 25-4-16(b)(7), 25-2-31, 25-2-35 (2019).  The Code provides, "[i]n the State land use agricultural district, a short-term vacation rental nonconforming use certificate may only be issued for single-family dwellings on lots existing before June 4, 1976."  See HCC § 25-4-16.1(e) (2019).[1]

---

[1]    June 4, 1976 was the effective date for Act 199, H.B. No. 3262-76, the act in which the legislature designated the permissible uses within the agricultural districts now codified at HRS § 205-4.5.

The County defines a short-term vacation rental as "a dwelling unit of which the owner or operator does not reside on the building site, that has no more than five bedrooms for rent on the building site, and is rented for a period of thirty consecutive days or less."  HCC § 25-1-5(b) (2019).  Short-term vacation rentals are permitted in several areas of the County, including its resort-hotel district, the general commercial district, village commercial district, multiple-family residential district, and General Plan Resort and Resort Node areas.  HCC §§ 25-4-16(a)(1), 25-5-90 (2019).

The Rosehill Petitioners applied for a non-conforming use certificate for their short-term vacation rental operated on a lot created after June 4, 1976 in an agricultural district, which the County denied.

Subsequently, the Rosehill Petitioners appealed the denials of their application for nonconforming use certificates to the County's Board of Appeals.  See HCC § 25-4-16.1(f).  The County and the Rosehill Petitioners jointly stipulated to stay the proceedings at the Board of Appeals pending the disposition of LUC petitions.

C.    The LUC Proceedings

In May 2020, the County and the Rosehill Petitioners separately filed petitions for declaratory orders before the

LUC, which were subsequently consolidated. The County presented the following factual situation: petitioners (a subset of whom are now the Rosehill Petitioners) who sought and were denied nonconforming use certificates for short-term vacation rentals have appealed the denials. The County requested "a Declaratory Order that 'farm dwellings' may not be used as short-term vacation rentals pursuant to [HRS] §§ 205-2 and 205-4.5, and Hawaiʻi Administrative Rules (HAR) § 15-15-25." (Emphasis added.) The Rosehill Petitioners requested a declaratory ruling "to clarify and affirm that the rental of farm dwellings for periods of 30 days or less was not prohibited in the State Agricultural District as of June 4, 1976." The Rosehill Petition described the Petitioners as owners of various parcels of land in the agricultural district, but did not specifically describe how the Petitioners were using the land.

On May 20, 2021, the LUC entered a consolidated order denying the Rosehill Petition and granting the County's petition.

The LUC concluded:

62. The farm dwelling use and a [short-term vacation rental] use are not compatible uses. A farm dwelling defined under HRS § 205-4.5(a)(4) as a single-family dwelling that either must be located on and used in connections with a farm, or where agricultural activity provides income to the family occupying the dwelling.

63. In the present proceedings, no facts were submitted which would contradict the conclusion that a [short-term vacation rental] use is basically a transient accommodation effectively for vacation or tourist use, which has no connection to a farm and is not accessory to an agricultural use, and does not meet either of the requirements of the farm dwelling definition. A [short-term vacation rental] use would therefore improperly displace the required agricultural use of a farm dwelling.

64. A [short-term vacation rental] is not a permitted use of a farm dwelling in the Agricultural District under HRS chapter 205. HRS §§ 205-2(d) and 205-4.5(a) expressly lists the permitted uses in the Agricultural District as a matter of law. If a use is not listed, it is prohibited. [Short-term vacation rentals] are not listed permitted uses of a farm dwelling under HRS chapter 205, and therefore, are prohibited.

65. Residential use of a farm dwelling without any connection to an agricultural use has never been allowed in the Agricultural District. The law has always required that a farm dwelling be used in connection with a farm or accessory to an agricultural use.

. . . .

69. A [short-term vacation rental] is not a permitted use as a farm dwelling under HRS chapter 205.

The order cited Save Sunset Beach Coal. v. City & Cnty. of Honolulu, 102 Hawai'i 465, 482, 78 P.3d 1, 18 (2003), in which we held, "[t]o the extent that the Hawai'i County Council has exercised its legislative judgment to regulate [short term vacation rentals] to protect and preserve agricultural land in a manner more restrictive than that provided by the LUC, the County Ordinance controls and must be followed."

The LUC Order further held that the petition filed by the Rosehill Petitioners was speculative under HAR § 15-15-98(a):

> 79. Without a "specific factual situation" presented to the Commission, the ROSEHILL PETITIONERS are putting forth a speculative or purely hypothetical scenario "which does not involve an existing situation or one which may reasonably be expected to occur in the near future." Therefore, the ROSEHILL PETITIONERS' request for relief should be denied, leaving only the County's question of whether a farm dwelling may be used as a [short-term vacation rental] for the Commission's consideration.

## D. Court Proceedings

In June 2021, the Rosehill Petitioners appealed the LUC Order to the Circuit Court of the Third Circuit.[2] In May 2022, the circuit court entered "Findings of Fact, Conclusions of Law, Decision and Order Reversing the State of Hawai'i Land Use Commission's Consolidated Declaratory Order." It held that the County's petition should be denied and the Rosehill petition granted for two reasons. First, it concluded that the "LUC abused its discretion when it denied the Rosehill Petition on the grounds that it was 'speculative or purely hypothetical.'" It found that the questions were substantially similar and based on the same factual situation, so the LUC's denial was an abuse of discretion. Second, it concluded that "language of HRS §§ 205-2 and 205-4.5 is plain and unambiguous," and that "[a] comparison of [the County ordinance] with HRS Chapter 205 as of

---

[2] The Honorable Wendy M. DeWeese presided.

June 4, 1976 reveals that a dwelling may simultaneously meet the definition of a 'farm dwelling' pursuant to HRS Chapter 205 and the County's definition of 'short-term vacation rental.'"

The LUC appealed the circuit court's order and judgment to the ICA.  First, the LUC argued that the circuit court failed to recognize the distinctions between the two petitions, which were critical to the LUC's decision.  Namely, the LUC never found that the Rosehill Petitioners actually had farm dwellings, so it concluded that their petition was hypothetical.  The County, on the other hand, needed to know if it could enforce its ordinance.  Because of this, the LUC argued, the parties were not similarly situated — so granting the County petition while denying the Rosehill petition was permissible.

Second, the LUC argued that short-term vacation rentals are not a permissible use of farm dwellings in the agricultural district.  The LUC argued (1) short-term vacation rental was not a permitted use under HRS § 205-4.5, which specifically states that "uses not expressly permitted . . . shall be prohibited"; (2) short-term vacation rentals would not align with the purpose of the agricultural district, which is to protect agricultural land for agricultural use; and (3) the LUC's interpretation of its own ambiguous statute should be

12

accorded deference.  Under the relevant LUC administrative rules:

> "Dwelling" means a building designed or used exclusively for single family residential occupancy, <u>but not including house trailer, multi-family unit, mobile home, hotel, or motel.</u>
>
> . . . .
>
> "Farm dwelling" means a single-family dwelling located on and used in connection with a farm or where agricultural activity provides income to the family occupying the dwelling.
>
> . . . .
>
> "Single-family dwelling" means a dwelling occupied exclusively by one family.

HAR § 15-15-03 (emphasis added).

As an "accessory building or use," a farm dwelling must also be "a subordinate building or use which is incidental to and customary with a permitted use of the land."  HAR § 15-15-03.  The LUC argued that transient uses cannot coexist with agricultural activity, and that it used its expertise in land use when making that determination.  And because its interpretation is consistent with the underlying legislative purpose of HRS chapter 205 ("to prevent 'the development of urban type residential communities in the guise of agricultural subdivisions'"), the LUC argued it did not err.

The County filed an answering brief, agreeing with the LUC's arguments.  The Rosehill Petitioners also answered,

13

defending the circuit court's decision.  First, they argued that they and the County presented the same fundamental question to the LUC, so the LUC could not deny the Rosehill petition as speculative or hypothetical while granting the County petition.  Second, they argued that the plain language of HRS § 205-4.5(a)(4), which defines a farm dwelling as a permissible use of agricultural land, does not set out a minimum rental period.  On the other hand, the County's definition of a short-term vacation rental relies solely on how long the premises are rented and not by the actual usage — so a farm dwelling can also be a short-term vacation rental.

Extensive briefing followed, in which the parties reiterated their arguments for and against the use of farm dwellings as short-term vacations rentals.  The Honolulu Department of Planning filed an amicus brief in support of the County's actions.  The brief reiterated the County's and LUC's arguments, but also raised the jurisdictional issue following this court's holding in Kanahele, which had recently been published.  It argued:

> there appears to be a question of whether the Third Circuit Court possessed jurisdiction to hear an appeal from the LUC's consolidated order. HRS § 205-19(a) states "[a]ny other law to the contrary notwithstanding, including chapter 91, any contested case under this chapter shall be appealed from a final decision and order or a preliminary ruling that is of the nature defined by section 91-14(a) upon the record directly to the supreme court for final decision." HRS § 205-19(a) (2017 and Supp. 2019). In addition, on March 15, 2023, the Hawai'i Supreme Court

14

> issued an opinion in In re Kanahele, [152] Haw[ai‘i] [501,
> 526 P.3d 478] (2023); No. SCOT-19- 0000830, 2023 Haw. LEXIS
> 75 (2023), in which it accepted jurisdiction over a direct
> appeal from an LUC order. See, Kanahele, 2023 LEXIS 75 at
> pp. 21-27. DPP respectfully declines to take a position on
> the proper disposition of this case in light of HRS § 205-
> 19(a) and Kanahele because jurisdictional matters are
> outside of its area of expertise and interest. However, DPP
> notes the issue raised by HRS [] and Kanahele based on
> counsel's duty to make this court aware of relevant law.

The Rosehill Petitioners responded. They claimed that the circuit court had appellate jurisdiction under Lingle v. Haw. Gov't Emps. Ass'n, 107 Hawai‘i 178, 111 P.3d 587 (2005), and no party disputed that jurisdiction. Alternatively, they requested the ICA transfer the case to this court nunc pro tunc. The LUC opposed the Rosehill Petitioners' request to transfer. Instead, the LUC asserted that the "correct, non-prejudicial way to dispose of the instant appeal, in light of Kanahele, is to vacate the circuit court order, strike any associated proceedings," and then proceed. (Emphasis in original.)

The Rosehill Petitioners followed their last brief with a motion to transfer the case to this court. They argued that when the LUC issued its declaratory order in 2020, all parties understood that the proper procedure to appeal was to the circuit court under Lingle. Then Kanahele changed that. Nunc pro tunc transfer, then, was necessary to preserve their right to appeal. The LUC and County both opposed the motion. They argued that in light of Kanahele, the only action that the

ICA could take was to vacate the circuit court's decision for lack of jurisdiction.

The Rosehill Petitioners also filed an application to transfer with this court. We accepted transfer in June 2023.[3]

### III. STANDARDS OF REVIEW

#### A. Statutory Interpretation

"The interpretation of a statute is a question of law which this court reviews de novo." Kanahele, 152 Hawai'i at 509, 526 P.3d at 486 (quoting Keep the N. Shore Country v. Bd. Of Land & Nat. Res., 150 Hawai'i 486, 506, 506 P.3d 150 (2022)).

> In reviewing questions of statutory interpretation, we are guided by the following principles:
>
>> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

State v. Castillon, 144 Hawai'i 406, 411, 443 P.3d 98, 103 (2019) (quoting Panado v. Bd. Of Trs., Emps.' Ret. Sys., 134 Hawai'i 1, 10, 332 P.3d 144, 153 (2014)).

---

[3] The County and LUC objected to transfer on jurisdictional grounds. But a jurisdictional defect in the case does not deprive this court of its ability to review the jurisdictional question. See Lingle, 107 Hawai'i at 182-83, 111 P.3d at 591-92 ("When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction . . . for the purpose of correcting the error in jurisdiction.").

**B.    Agency Appeals**

A court's review of administrative agency decisions is governed by HRS § 91-14(g) (Supp. 2016), which provides:

> Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1) In violation of constitutional or statutory provisions;
> >
> > (2) In excess of the statutory authority or jurisdiction of the agency;
> >
> > (3) Made upon unlawful procedure;
> >
> > (4) Affected by other error of law;
> >
> > (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> >
> > (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)."  Kanahele, 152 Hawai'i at 509-10, 526 P.3d at 486-87 (brackets omitted) (quoting Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 416, 91 P.3d 494, 498 (2004)).

## IV.  DISCUSSION

As discussed below, we hold as follows: (1) the case can be transferred nunc pro tunc because under Honoipu Hideaway, LLC v. Land Use Comm'n, 154 Hawai'i 372, 550 P.3d 1230 (2024), it is within the inherent power of this court and is in pursuit of our longstanding policy to hear cases on the merits; (2) we may use the record from the lower courts in the interest of judicial efficiency, though we owe the circuit court's holding no deference and the Rosehill Petitioners have the burden of showing that the LUC order was arbitrary and capricious; (3)  the LUC could grant the County petition while denying the Rosehill petition because the two parties were not similarly situated; and (4) a farm dwelling in the agricultural district cannot be used as a short-term vacation rental because that use fails to accord with the purpose of the agricultural district.

Accordingly, we vacate the circuit court's order and judgment, and affirm the LUC's declaratory order.

**A.  The Case Can be Transferred Nunc Pro Tunc to Accord with Hawai'i Courts' Longstanding Policy to Reach the Merits of a Case**

This court recently issued Honoipu, in which a party appealed a declaratory order from the LUC.  Its reasoning applies with equal force here.  There, the circuit court reserved a question for this court: "Whether [the circuit court]

has the inherent and statutory authority to transfer nunc pro tunc an appeal, which was timely filed with [the circuit court], to the Supreme Court of Hawai'i as the court with appellate jurisdiction."[4]  Honoipu, 154 Hawaiʻi at 373, 550 P.3d at 1231 (brackets in original).  The question was briefed by both Honoipu (who was represented by the same lawyers as the Rosehill Petitioners) and the LUC (who is party to this case).  We answered yes to the reserved question because "[a]llowing such a transfer in these limited circumstances accords with our longstanding policy to hear cases on the merits, and there is both inherent and statutory power for the courts to do so."  Id. at 374, 550 P.3d at 1232.  The reasoning in Honoipu applies here, as the circumstances are nearly the same.  Honoipu appealed a LUC declaratory order and that appeal was pending before a circuit court when Kanahele was published.  This case, also an appeal of a LUC declaratory order, was pending before the ICA when Kanahele was published.

> In Honoipu, we held that:
>
> There is both statutory and inherent power to transfer [the] case. . . . this court has the authority "to make and issue any order or writ necessary or appropriate in aid of its jurisdiction."  HRS § 602-5(a)(5)(2016).  This court may also

---

[4]        "Nunc pro tunc translates to 'now for then.' Nunc pro tunc actions allow courts to remedy clerical issues, clear errors, and prevent manifest injustice." Honoipu at 374 n.2, 550 P.3d at 1232 n.2 (citing Nunc Pro Tunc, Black's Law Dictionary (11th ed. 2019)).

19

> make and award such judgments, decrees, orders
> and mandates, issue such executions and other
> processes, and do such other acts and take such
> other steps as may be necessary to <u>carry into
> full effect the powers which are or shall be
> given to it by law or for the promotion of
> justice in matters pending before it</u>.

HRS § 602-5(a)(6) (emphasis added).

> Article VI, section 1 of the Hawai'i Constitution entrusts
> courts with the "judicial power of the State." This court
> has interpreted the judicial power as inherently including
> "the power to administer justice." <u>Farmer[ v. Admin Dir.
> of Ct., State of Haw.]</u>, 94 Hawai'i [232,] 241, 11 P.3d
> [457,] 466 [(2000)] (quoting <u>State v. Moriwake</u>, 65 Haw. 47,
> 55, 647 P.2d 705, 712 (1982)). Hawai'i courts "have
> inherent equity, supervisory, and administrative powers as
> well as inherent power to control the litigation process
> before them. Inherent powers of the court are derived from
> the state Constitution and are not confined by or dependent
> on statute." <u>State v. Harrison</u>, 95 Hawai'i 28, 32, 18 P.3d
> 890, 894 (2001) (quoting <u>Kawamata Farms, Inc. v. United
> Agric. Prods.</u>, 86 Hawai'i 214, 242, 948 P.2d 1055, 1083
> (1997)). These powers include, but are not limited to, the
> power to "create a remedy for a wrong even in the absence
> of specific statutory remedies[,] . . . to prevent unfair
> results[,] . . . and to curb abuses and promote a fair
> process."
>
> . . . .
>
> [T]he power to "do such other acts and take such other
> steps as may be necessary to carry into full effect the
> power which are or shall be given to them by law or for the
> promotion of justice" gives the circuit court the power to
> correct a jurisdictional mistake that was no party's or
> court's fault. HRS § 603-21.9(6).

<u>Honoipu</u>, 154 Hawaiʻi at 375-76, 550 P.3d at 1233-34.

This court further held that <u>nunc</u> <u>pro</u> <u>tunc</u> transfer

was appropriate to accord with "our longstanding policy to hear

cases on the merits." <u>Id.</u> at 374, 550 P.3d at 1232. If <u>nunc</u>

<u>pro</u> <u>tunc</u> transfer was not deemed appropriate in <u>Honoipu</u>, the

appellant likely would have lost their right to appeal and their

day in court. <u>Id.</u> at 376-77, 550 P.3d at 1284-85. Similarly,

here, unless the transfer is made nunc pro tunc to when the Rosehill Petitioners filed their initial appeal, they will lose their right to an appeal. The case is ripe for review now.

Thus, for the same reasons expressed in Honoipu, we hold that this case can be transferred using this court's inherent and statutory powers and that the transfer is effective nunc pro tunc to June 18, 2021, the date the Rosehill Petitioners filed their initial appeal of the LUC declaratory order.

**B.      This Court May Review the Entire Record on Appeal, Including the Circuit Court and ICA Proceedings, but the Circuit Court's Ruling Holds No Weight**

The LUC and County argue that we should only review the agency record and disregard the circuit court and ICA records entirely. They contend that if the Rosehill Petitioners had properly brought the case under Kanahele's ruling, "[t]he record accompanying a direct appeal would have included only the LUC's record and Consolidated Order, not the record developed by the circuit court or the ICA briefing." Further, they contend that because the circuit court lacked jurisdiction, that record and references to that court's decision will "taint the arguments" on appeal. The LUC specifically argued that our holding in Kanahele stated "that the proper record is the record

from the LUC's proceedings that resulted in the LUC's declaratory order — nothing less, and, importantly, nothing more."  See Kanahele, 152 Hawai'i at 511-12, 526 P.3d at 488-89 (citing HRS § 205-19) ("any contested case under this chapter shall be appealed from a final decision and order or a preliminary ruling that is of the nature defined by section 91-14(a) upon the record directly to the supreme court for final decision.").

For the sake of judicial efficiency, we may review the briefing from both the ICA and the circuit court.  If the Rosehill Petitioners had properly brought their appeal to this court under Kanahele's holding, then we would have reviewed the case in the same posture as the circuit court did here.  The circuit court acted as an appellate body in precisely the same manner as this court does now.

The LUC and County do not contend that additional evidence was introduced at the circuit court level that would have affected that court's review of the agency's record below. They want us to ignore the entire record from the lower courts and dismiss the case.  We decline to do so.

This court held in Kanahele that it may directly review agency decisions on petitions for declaratory relief. 152 Hawai'i at 511, 526 P.3d at 488.  Prior to that holding,

there was confusion among litigants as to the proper procedural avenue.  Some petitioners, like Kanahele, appealed directly to this court.  Others, such as the Rosehill Petitioners, appealed their agency decision to the circuit court.  Kanahele's jurisdictional rule aimed to align appeals of agency decisions with the legislature's intent in passing HRS § 205-19(a) (as amended by Act 48) to provide for this court's direct review of contested cases and declaratory orders because they have the "same status" under HRS §§ 91-8, 91-14 and 205-19.  Id. at 512, 526 P.3d at 489.

While we may review the record from the lower court, the circuit court's findings of fact, conclusions of law, and judgment hold no weight.  We primarily consider the briefing by the parties because those briefs set forth the parties' positions on direct appeal from the LUC.  We review the LUC order de novo.  See Kanahele, 152 Hawaiʻi at 509-10, 526 P.3d at 486-87 (brackets omitted) (quoting Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 416, 91 P.3d 494, 498 (2004)).  Because the Rosehill Petitioners had the initial burden on appeal to show that the LUC acted arbitrarily and capriciously, they still have that burden now.

**C.    The LUC Did Not Act Arbitrarily or Capriciously in Granting the County's Declaratory Order While Denying the Rosehill Petition because the Two Parties Were Not Similarly Situated**

The Rosehill Petitioners argue that the LUC acted outside of its authority by denying their petition.  They claim that because both petitions were premised on the same facts, the LUC acted arbitrarily and capriciously in denying one petition and ruling on the other.  We disagree.  While the two petitions were consolidated by the LUC for factfinding, the two parties are not similarly situated.  The County is required to construe and enforce HRS chapter 205 through its own ordinances.  By presenting the LUC with a question of whether it had the authority to enforce that code against landowners, the County showed it was not dealing with a hypothetical or speculative situation.  The County needed to know if it could enforce HCC § 25-4-16 against landowners in violation of the ordinance.  There is nothing hypothetical or speculative about that situation.

The Rosehill Petitioners, on the other hand, did not provide evidence in the record for the LUC to hold that they had farm dwellings connected to agricultural use of the land.  Their counsel stated the following on the record: "As a matter of candor, I have no idea how these particular properties are used. I don't know, because that doesn't matter;" and "we talked about this, the [County] Corp Counsel and I, we specifically discussed

what facts should be presented to the Commission, whether it was necessary to present issues related to any particular property or any particular use, and we both agreed that it was not . . . and that there was no need for any particular information about any particular property because that's not why we're here."

Determining whether the Rosehill Petitioners actually had farm dwellings was the LUC's obligation. The LUC found that the Rosehill Petitioners "have not submitted a sufficient record demonstrating that their use or intended use of their subject properties are 'farm dwellings' or related to agriculture." It found that the Rosehill Petitioners showed only that they had lots in the agricultural district created after June 4, 1976 and that they had rented those lots for periods of less than thirty-one days. The Rosehill Petitioners argue that the County "admitted" that the Petitioners had farm dwellings, and that admission should carry the day. The Rosehill Petitioners are wrong. In the hearing that the Rosehill Petitioners refer to for County's "admission," a deputy planning director for the County said, "[the Rosehill lots] are all on ag property and parcels that were created after June 4th, 1976, therefore, we consider all of their dwelling units on their property to be farm dwellings." But that is not all it takes to be a farm dwelling. A farm dwelling must also be "used in connection with a farm." For the LUC to find that the Rosehill lots were farm dwellings,

the Rosehill Petitioners would have had to also show that their dwellings were "used in connection with a farm." It found that they did not provide such evidence. If a representative from the county used the wrong definition for a farm dwelling, there is no reason for the LUC to credit her "admission" that the Rosehill lots were farm dwellings.

The Rosehill Petitioners asked the highly-specific question to the LUC: whether "the rental of farm dwellings for periods of 30 days or less was not prohibited in the State Agricultural District as of June 4, 1976." This attempt to narrow the question while not showing "any particular information about any particular property" fails to "involve an existing situation or one which may reasonably be expected to occur in the near future" required by HAR § 15-15-100(a)(1)(A) (2013). Therefore, the LUC's conclusion that the Rosehill Petition was hypothetical was reasonable.

**D.  The LUC Did Not Act Arbitrarily or Capriciously in Holding that Farm Dwellings in the Agricultural District Cannot Be Used as Short-Term Vacation Rentals**

The central merits issue of this appeal is whether farm dwellings in the agricultural district can be used as short-term vacation rentals under HRS chapter 205. We hold that they cannot.

26

1. **HRS § 205-4.5 is ambiguous as to short-term vacation rentals**

The Rosehill Petitioners contend that the text of HRS chapter 205 controls and is unambiguous. They argue that because HRS § 205-4.5(a)(4) does not mention how long farm dwellings need to be rented for, and because the County Ordinance defines short-term vacation rentals in part as being rented for thirty days or fewer, farm dwellings may be used as short-term vacation rentals. That narrow view of the statute, which would allow for the subversion of the purpose of HRS chapter 205, cannot stand.

In interpreting statutes, we start with the statute's language. If there is ambiguity, we look to the intent of the legislature. See Citizens Against Reckless Dev., 114 Hawai'i 184, 194, 159 P.3d 143, 153 (2007) (quoting Peterson v. Haw. Elec. Light Co., 85 Hawai'i 322, 327-28, 944 P.2d 1265, 1270- 71 (1997)).

HRS § 205-4.5[5] states:

**205-4.5  Permissible uses within the agricultural districts**.  (a)  Within the agricultural district, all lands with soil classified by the land study bureau's detailed land classification as overall (master) productivity rating class A or B and for solar energy facilities, class B or C, shall be <u>restricted to the following permitted uses</u>:

 . . .

(4) Farm dwellings, employee housing, farm buildings, or activities or uses related to farming and animal husbandry. "Farm dwelling", as used in this paragraph, means a <u>single-family dwelling located on and used in connection with a farm</u>, including clusters of single-family farm dwellings permitted within agricultural parks developed by the State, or <u>where agricultural activity provides income to the family occupying the dwelling</u>.

By the statute's text, there appear to be two types of single-family dwellings that qualify as farm dwellings: the first is a single-family dwelling located on and used in connection with a farm.  The second is one in which agricultural activity provides income to a resident or family occupying the dwelling.

There is ambiguity in the first type of farm dwelling as to what "in connection with" a farm means.  In the past, this

---

[5]    In 2021, the legislature amended "used in connection with" to "accessory to" following a State Office of Planning "Study of Subdivision and [Condominium Property Regime] on Agricultural Lands on Oahu" in 2021. 2021 Haw. Sess. Laws Act 77, §§ 1-2  at 247-48.  The Office of Planning recommended the change after it found that there was a "proliferation of dwellings in the agricultural district without any significant farm component." Off. of Planning, State of Haw., <u>Act 278 Study of Subdivision and CPR on Agricultural Lands on Oahu</u>, at 17 (Dec. 29, 2020) https://files.hawaii.gov/dbedt/op/lud/20201221%20Act%20278%20SLH%202019%20Project/Act278FinalReporttoLeg20201230.pdf [https://perma.cc/59QG-5L7P].  The shift from "used in connection with" to "accessory to"  supports our analysis.  If anything, it confirms that farm dwellings are not, and were never intended to be, properly used as short-term vacation rentals.

court has interpreted "in connection with" to mean "related to," "linked to," or "associated with."  See Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 115 Hawai'i 201, 225, 166 P.3d 961, 985 (2007).  But that definition does not shed more light on what the relationship between the single-family dwelling and the farm must be.  It might mean that a farmer tenant has a long-term lease to grow a particular crop, and that tenant lives in the single-family dwelling.  The dwelling is "linked to" the farm in that it houses the person that farms there.  Or it might also mean that a visitor to the County of Hawai'i stays at a single-family dwelling on a farm that operates as a short-term vacation rental.  "Reasonably well-informed persons" can understand the statute "in two or more different senses." Sutherland Statutory Construction § 45:2 (7th ed.).  Thus, the statute has some ambiguity.

The fact that HRS chapter 205 does not require a minimum rental period for farm dwellings does not mean that they can be short-term vacation rentals.  Rather, the text prohibits "uses not expressly permitted."  HRS § 205-4.5(b).  And "it is 'generally presumed that the legislature acts intentionally and purposely in the disparate inclusion or exclusion' of terms in its statutes."  Matter of Gas Co., LLC, 147 Hawai'i 186, 200, 465

P.3d 633, 647 (2020) (quoting State v. Savitz, 97 Hawai'i 440, 447, 39 P.3d 567, 574 (2002) (holding that the legislature could have drafted a statute to include a limitation on the court's discretion and noting that "[t]he fact that it did not do so manifests its intent that it chose not to do so"). Expressio unius est exclusio alterius principles apply here.[6] The 1976 legislature could have accounted for some type of transient vacation accommodation in its extensive list of permitted uses. But it did not.

Of the twenty-four expressly permitted uses under HRS § 205-4.5, of which farm dwellings are but one, none of them resemble anything close to the type of transient accommodation that a short-term vacation rental is. A somewhat comparable use is "agricultural tourism," which was not added until later and is only permissible in Maui County. 2012 Haw. Sess. Laws Act 329, § 2 at 1113. Overnight camps, another somewhat close use, are explicitly prohibited. HRS § 205-4.5(a)(6); see Ho'omoana Found. v. Land Use Comm'n, 152 Hawai'i 337, 526 P.3d 314 (2023) (holding that prohibited uses in the agricultural district cannot be permitted via special use permits).

---

[6] Expressio unius est exclusio alterius means "the expression of one thing is the exclusion of the other." Expressio unius is "a canon of construction holding that to express or include one thing implies the exclusion of the other." Expressio unius est exclusio alterius, Black's Law Dictionary (12th ed. 2024).

The LUC argued that "if farm dwellings could be used for transient accommodations the Legislature would not have needed to add a provision expressly permitting agricultural tourism in HRS Chapter 205." While "the views of a subsequent [legislature] form a hazardous basis for inferring the intent of an earlier one," the more recent statutory language can provide some context for the scope of HRS chapter 205 from 1976. United States v. Price, 361 U.S. 304, 313 (1960). It can tell us what the subsequent legislature thought was permissible and what was not. See Keliipuleole v. Wilson, 85 Hawai'i 217, 225, 941 P.2d 300, 308 (1997) ("a court may look to 'subsequent legislative history or amendments to confirm its interpretation of an earlier statutory provision.'") (quoting Franks v. City & Cnty. of Honolulu, 74 Haw. 328, 340 n.6, 843 P.2d 668, 674 n.6 (1993)); see also Cnty. of Hawai'i v. Ala Loop Homeowners, 123 Hawai'i 391, 415, 235 P.3d 1103, 1127 (2010) (holding that a report from a subsequent legislature "is not dispositive in our analysis since it cannot change the meaning of article XI, section 9 as approved by the voters in 1978, and since it sets forth the views only of the joint committee, rather than the legislature as a whole. Nevertheless, it is relevant to the extent that it provides an explanation for the non-action of the legislature, which is the body that would be charged with

31

enacting legislation to implement the provision if it was not self-executing.") (emphasis added).

Both parties cite to Curtis. There, this court wrote that because land use statutes are in derogation of the common law, their provisions must be strictly construed. But because the court determined that the term "utility lines" in HRS § 205-4.5(a)(7) was ambiguous, it looked to the purpose of the statute. We therefore do the same.

2. **The purpose of HRS § 205-4.5 is to restrict the use of specific land to agricultural purposes, and short-term vacation rentals undermine that purpose**

Because the meaning of "farm dwelling" is ambiguous, we undertake our "obligation to ascertain and give effect to the intention of the legislature." Castillon, 144 Hawai'i at 411, 443 P.3d at 103 (quoting Panado, 134 Hawai'i at 10, 332 P.3d at 153). While we primarily look at the statute's text, in some situations "an examination of the debates, proceedings and committee reports is useful." Nelson v. Hawaiian Homes Comm'n, 127 Hawai'i 185, 198, 277 P.3d 279, 292 (2012). As discussed supra, the text of HRS § 205-4.5 and HRS chapter 205 more broadly cut against the use of transient short-term vacation rentals in agricultural districts. The text specifically

32

excludes any unenumerated use,[7] and the requirement that the farm dwelling be "used in connection with a farm" also cuts against transient rental uses.  See HRS § 205-4.5(a)(4).

When creating the LUC in 1961, the legislature wrote that,

> [i]nadequate controls have caused many of Hawaiʻi's limited and valuable lands to be used for purposes that may have a short-term gain to a few but result in a long-term loss to the income and growth potential of our economy. . . . Scattered subdivisions with expensive, yet reduced, public services; the shifting of prime agricultural lands into nonrevenue producing residential uses when other lands are available that could serve adequately the urban needs . . . these are evidences of the need for public concern and action.

1961 Haw. Sess. Laws Act 187, § 1 at 299.

A standing committee report described the purpose of the bill proposing the LUC to be, in part, "to protect and conserve through zoning the urban, agricultural, and conservation lands within all the counties.  A coordinated, balance[d] approach . . . is essential in order to . . . [c]onserve forests, water resources and land, <u>particularly to preserve the prime agricultural lands from unnecessary urbanization</u>."  H. Stand. Comm. Rep. No. 395, in 1961 House Journal at 855 (emphasis added).

---

[7]    HRS § 205-4.5(b) reads, in part: "Uses not expressly permitted in subsection (a) shall be prohibited, except the uses permitted as provided in sections 205-6 and 205-8, and construction of single-family dwellings on lots existing before June 4, 1976."

Fifteen years later, seeking to protect agricultural lands from increasing urbanization, the legislature found that,

> [a]fter careful consideration, your Committee finds there is a danger that agricultural subdivisions may be approved by the counties, and thus, put agricultural lands to uses other than for an agricultural pursuit. Inasmuch as the purpose of the agricultural district classification is to restrict the uses of the land to agricultural purposes, the purpose could be frustrated in the development of urban type residential communities in the guise of agricultural subdivisions.
>
> To avoid possible abuse within the agricultural district, this bill more clearly defines the uses permissible within the agricultural district. Except for those uses permitted under special use permits in Section 205-6 and those non-conforming uses permitted in Section 205-8, uses not specifically permitted by this bill shall be prohibited. This bill further provides that the restrictions on uses and the condition that the uses shall be primarily in pursuit of an agricultural activity shall be expressly contained in the instruments of conveyance and shall be encumbrances running with the land.
>
> . . . .
>
> [T]his bill is not intended to change the existing permitted uses on lands within the agricultural district . . . . Rather, the intent of this bill is to give additional protection to those lands within the agricultural district . . . .

Conf. Comm. Rep. No. 6, in 1976 House Journal, at 1095 (first emphasis added, second emphasis in original).

The definition of "farm dwelling" was codified by House Bill 3262-76. Remarks from the chair of the House Committee on Water, Land Use Development, and Hawaiian Homes add more color to the findings and purpose of the bill:

> We, in Hawai'i, have always been proud of our Land Use Law and its effectiveness in regulating land use activities in the State. The economic importance of agriculture, the imminent pressures of land development, and the prospect of urban sprawl were factors behind the establishment of land use laws. In fact, when the Legislature enacted Chapter 205, it declared that 'inadequate controls have caused many

of Hawaiʻi's limited and valuable lands to be used for purposes that may have a short-term gain for a few, but would result in long-term losses to the income and growth potential of our economy.'

As part of our land use regulation scheme, we established land use classifications, among which is the agricultural district.  Within an agricultural district, we define certain permitted uses.  These uses include growing of crops, raising livestock, grazing, farm buildings, public buildings necessary for agricultural practices, utility lines, some open-type recreation, and other <u>uses necessary for conducting agricultural activities</u>.

The administration of permitted uses within agricultural districts was left to the counties which, by ordinance, could set more restrictive regulations if they so desired.

Mr. Speaker, we have laws, we have regulations and we have county ordinances which govern the uses of agricultural lands.  But, <u>today, we have agricultural subdivisions within agricultural districts which can only be viewed as a subterfuge of the spirit and intent of our land use laws</u>.

What has been happening, Mr. Speaker, is that landowners have found it difficult to get land reclassified from agriculture to urban.  Therefore, they have taken advantage of county zoning provisions and, under the pretext of agricultural subdivisions, have been subdividing prime agricultural lands into two-acre sites for residential purposes.

In practice, these <u>agricultural subdivisions are not only circumventing county zoning provisions but are being offered at prices very few can afford and becoming, in fact, agricultural estates</u>.

. . . .

House Bill 3262-76, House Draft 2, amends the land use law by listing permissible uses of Class A and B lands within agricultural districts.  Further, the bill specifically states that no subdivision of Class A or B lands within an agricultural district shall be approved by a county unless the land within the subdivision is subject to the use restrictions in the law and only on the condition that the use shall be primarily in pursuit of agricultural activity.  The bill provides for county regulation of uses for Class C, D and E lands.

The bill further requires that any deed, lease, agreement of sale, mortgage or any instrument of conveyance on land located within an agricultural subdivision shall expressly contain a restriction on use, and that such

> restriction shall provide that the use will be primarily
> agricultural in nature.  This condition on any instrument
> of conveyance shall remain with the land until it is
> reclassified for another use.

1976 House Journal at 532-33 (Statement of Representative Richard Kawakami, Chairman, H. Comm. on Water, Land Use Dev. & Hawaiian Homes) (emphases added).

While only some of the issues motivating the passage of House Bill 3262-76 are relevant here, it is clear that the general intent of the legislature was to protect land in the agriculture district from being used for non-agricultural purposes.

There is no indication either in the statute's text or its legislative history that the legislature intended to allow for farm dwellings to be used as short-term vacation rentals untethered from agricultural purposes.  Rather, transient accommodations are antithetical to the legislature's intent.  In Curtis, this court held that there was ambiguity in whether cellphone towers were "utility lines" or "communications equipment buildings" under HRS § 205-4.5(a)(7).  90 Hawai'i at 395-96, 978 P.2d at 833-34.  We therefore looked "to the 'reason and spirit' of state land use law to determine whether a cellular phone tower falls within what the legislature

contemplated as utility lines."  Id. at 396, 978 P.2d at 834

(quoting HRS § 1-15(2)).  This court wrote:

> In sum, the overarching purpose of the state land use law is to "protect and conserve" natural resources and foster "intelligent," "effective," and "orderly" land allocation and development.  See 1961 Haw. Sess. L. Act 187, § 1 at 299 ("[I]n order to preserve, protect and encourage the development of the lands in the State for those uses to which they are best suited for the public welfare ..., the power to zone should be exercised by the State.").  See also Pearl Ridge Estates Community Ass'n v. Lear Siegler, Inc., 65 Haw. 133, 144 n. 9, 648 P.2d 702, 709 n. 9 (Nakamura, J., concurring) ("Thus, conservation lands must be reserved if practicable, agricultural lands should be protected, and urban lands should be developed in orderly fashion.").

Id.

This court therefore held that "wholesale inclusion of

cellular telephone towers in agricultural districts as 'utility

lines' under HRS § 205-4.5(a)(7) unreasonably expands the

intended scope of this term and frustrates the state land use

law's basic objectives of protection and rational development."

Id. (emphasis added). Including short-term vacation rentals in

the definition of "farm dwellings" would similarly unreasonably

expand the intended scope of the term and frustrate the state

land use law's basic objectives of protection and rational

development.

A farm dwelling must be a "single-family dwelling

located on and used in connection with a farm," or "where

agricultural activity provides income to the family occupying

the dwelling."  HRS § 205-4.5(a)(4).  In other words, it must be

37

used in connection with agricultural activities.  The use of a dwelling as a short-term vacation rental is not connected to agricultural activities.

> **3.    This court defers to the LUC's interpretation of an ambiguous statute unless it is plainly erroneous or inconsistent with the underlying legislative purpose**

When there is ambiguous statutory language, "the applicable standard of review regarding an agency's interpretation of its own governing statute requires this court to defer to the agency's expertise and to follow the agency's construction of the statute unless that construction is palpably erroneous."  Pofolk Aviation Haw., Inc. v. Dep't of Transp., 136 Hawai'i 1, 5-6, 354 P.3d 436, 440-41 (2015) (quoting Gillan v. Gov't Emps. Ins. Co., 119 Hawai'i 109, 114, 194 P.3d 1071, 1076 (2008)). Of course, the "court must still independently analyze the ambiguous statute to determine whether the agency's interpretation is palpably erroneous."  Id. at 7, 354 P.3d at 442 (citing Chun v. Emps. Retirement Sys., 61 Haw. 596, 600-02, 607 P.2d 415, 419 (1980).  Palpable error can occur when the agency's interpretation is "inconsistent with the underlying legislative purpose."  Dist. Council 50, of Int'l Union of Painters & Allied Trades v. Lopez, 129 Hawai'i 281, 287, 298 P.3d 1045, 1051 (2013) (quoting Haw. Teamsters & Allied Workers v.

Dep't of Labor & Indus. Rels., 110 Hawai'i 259, 265, 132 P.3d 368, 374).  This deference to the agency "'reflects a sensitivity to the proper roles of the political and judicial branches,' insofar as 'the resolution of ambiguity in a statutory text is often more a question of policy than law.'" Gillan, 119 Hawai'i at 118, 194 P.3d at 1080 (quoting In re Water Use Permit Applications, 94 Hawai'i 97, 145, 9 P.3d 409, 457 (2000)).

As discussed supra, the text of HRS § 205-4.5 is ambiguous as to whether a farm dwelling can be used as a short-term vacation rental.  Here, the LUC's interpretation of HRS § 205-4.5 was not palpably erroneous and was consistent with the underlying legislative purpose of the statute.  The LUC correctly concluded that the State and the County have concurrent jurisdiction over land in the agricultural district, and, quoting this court's decision in Save Sunset Beach, 102 Hawai'i at 482, 78 P.3d at 18, "only a more restricted use as between [the county zoning and State Land Use law] is authorized."  The LUC ruled that unless a dwelling is in fact used in connection with a farm, it is not a farm dwelling; that a short-term vacation rental is a use antithetical to farm dwelling usage; and that therefore a farm dwelling may not be

used as a short-term vacation rental.  Therefore, it determined that the County ordinance was enforceable.

The LUC Order conforms with HRS § 205-4.5, resolving the ambiguity in a manner that is consistent with the underlying legislative purpose.  The underlying purpose, discussed <u>supra</u> Section IV(D)(2), is to protect land in the agriculture district from being used for non-agricultural purposes.  The LUC Order concluded that farm dwellings cannot be used as short-term vacation rentals, protecting land in the agriculture district from what it found to be non-agricultural use.  This decision accords with the legislative purpose of the statute discussed above, and we therefore affirm.

We note that Hawai'i's approach to administrative deference now differs sharply from federal precedent.  These days, the United States Supreme Court seems determined to ensure that "settled law easily unsettles."  <u>City & Cnty. of Honolulu v. Sunoco LP</u>, 153 Hawai'i 326, 361, 537 P.3d 1173, 1208 (2023) (Eddins, J., concurring).  Recently, the court toppled forty years of precedent that shaped the "warp and woof of modern government."  <u>Loper Bright Enters. v. Raimondo</u>, 144 S. Ct. 2244, 2294 (2024) (Kagan, J., dissenting).  The court overruled <u>Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984), which molded administrative law doctrine.  Under <u>Chevron</u>, the reviewing court would, upon close inspection, ask

40

if Congress had "directly spoken to the precise question at issue." Id. at 842. If it had, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. If the statute was silent or ambiguous as to the question at hand, the court would defer to the administrative agency's reasonable interpretation of the statute. Id. at 844.

Chevron's well-reasoned analysis allowed agencies to function in a modern nation using older statutes — statutes that, at the time they were written, could not possibly account for the many nuanced situations that arise in a rapidly changing world. Justice Kagan's dissent in Loper Bright cites to paradigmatic examples of agency deference. See Loper Bright, 144 S. Ct. at 2296-97. Chevron made for good, balanced governance, whereby Congress made laws while agencies, subject to accountability from a duly-elected President, implemented those laws and reasonably filled in the gaps. As is often the case, policy implementation requires substantial know-how. Under Chevron, agencies had the ability to allow experts to, within reason, make the rules.

Now, the U.S. Supreme Court considers itself and other federal courts the experts on exceedingly complicated areas of

American life, including worker safety,[8] air quality,[9] food and drug safety,[10] airplane safety,[11] telecommunications,[12] and the integrity of our financial markets.[13]  We do not believe the expertise of courts outstrips that of the agencies charged with implementing complex regulatory schemes on a day-to-day basis.[14] In Hawai'i, we defer to those agencies with the na'auao (knowledge/wisdom) on particular subject matters to get complex issues right.  "Ku'ia ka hele a ka na'au ha'aha'a (hesitant walks the humble hearted)."  Sunoco, 153 Hawai'i at 363, 537 P.3d at 1210 (2023) (Eddins, J., concurring).  A court's domain is the law, and judges should recognize the limits of their expertise.

4.    **The County ordinance is a valid legislative act accorded deference**

When the County passed Ordinance 18-114, amending Chapter 25 of the HCC, it required that existing short-term

---

[8]    See, e.g., Pauley v. BethEnergy Mines, Inc., 501 U.S. 680 (1991).

[9]    See, e.g., EPA v. EME Homer City Generation, L.P., 572 U.S. 489 (2014).

[10]    See, e.g.,  Teva Pharmaceuticals USA, Inc. v. FDA, 514 F. Supp. 3d 66 (D.D.C. 2020)

[11]    See, e.g., Newton v. F.A.A., 457 F.3d 1133 (10th Cir. 2006).

[12]    See, e.g., City of Arlington v. F.C.C., 569 U.S. 290 (2013).

[13]    See, e.g., U.S. v. O'Hagan, 521 U.S. 642 (1997).

[14]    E.g., Ohio v. EPA, 144 S. Ct. 2040, 2049 (2024) (In Court's initial opinion, pausing EPA's plan to bring several states into compliance with ozone pollution-control requirements, confusing "nitrogen oxides," a group of gases that the EPA is targeting to stem air pollution, with "nitrous oxide," commonly known as laughing gas).

vacation rentals obtain nonconforming use certificates. HCC §§ 25-1-5; HCC § 25-4-16.1(a), (e). The scheme generally prohibited the issuance of nonconforming use certificates in the agricultural district — only single-family dwellings on lots existing before June 4, 1976 could obtain a certificate. HCC § 25-4-16.1(e).[15] This court held in Save Sunset Beach that a zoning ordinance passed by the County of Honolulu was a legislative act and is subject to the deference given legislative acts. 102 Hawaiʻi at 474, 78 P.3d at 10.

We also held in Save Sunset Beach that "only a more restricted use as between [the County zoning and the State Land Use law] is authorized." 102 Hawaiʻi at 482, 78 P.3d at 18. The State adopted a dual land use designation approach, "envision[ing] that the counties would enact zoning ordinances that were somewhat different from, but not inconsistent with, the statutes." Id. Here, the ordinance is more restrictive than HRS § 205-4.5 in that it defines short-term vacation rentals and the County will not issue nonconforming use certificates unless lots were existing before June 4, 1976. When read in conjunction with HRS § 205-4.5(b)'s mandate that

_____

[15] The County defines a short-term vacation rental as "a dwelling unit of which the owner or operator does not reside on the building site, that has no more than five bedrooms for rent on the building site, and is rented for a period of thirty consecutive days or less." HCC § 25-1-5.

uses are prohibited unless expressly authorized, the County ordinance is "different from, but not inconsistent with" the state statute.

The Rosehill Petitioners argue that because HRS § 205-4.5(a)(4) does not mention a minimum rental period, it allows for their less-than-30-day rentals. But that conclusion ignores the Sunset Beach holding that allows counties to make more restrictive zoning rules than the state, so long as those rules are consistent with the purpose of state zoning. Here, the County's ordinance is consistent with state zoning.

## V.    CONCLUSION

For the reasons stated above, we hold that (1) this case's transfer is nunc pro tunc to June 18, 2021; (2) the Rosehill Petitioners have failed to show that the LUC acted arbitrarily or capriciously in granting the County's petition while denying the Rosehill Petition; and (3) farm dwellings may not be used as short-term vacation rentals under HRS chapter 205.

Because it lacked jurisdiction, we (1) vacate the circuit court's May 2, 2022 "Findings of Fact, Conclusions of Law, Decision and Order Reversing the State of Hawai'i Land Use Commission's Consolidated Declaratory Order"; and (2) vacate the

circuit court's May 2, 2022 Judgment.  On the merits, we affirm

the LUC's May 20, 2021 declaratory order.

Calvert G. Chipchase                 /s/ Mark E. Recktenwald
Christopher T. Goodin
(Roy A. Vitousek III and             /s/ Sabrina S. McKenna
Katherine E. Bruce,
on the briefs)                       /s/ Todd W. Eddins
for appellants-appellees
                                     /s/ Lisa M. Ginoza
Douglas S. Chin
Christine N. Ohira                   /s/ Jeannette H. Castagnetti
Eric S. Robinson
Cori J. Terayama
(Julie H. China,
on the briefs)
for appellee-appellant

Mark D. Disher
(Jean Campbell and
Lerisa L. Heroldt,
on the briefs)
for appellee-appellee

Brad T. Saito,
on the briefs
for amicus curiae

