**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000289**
**13-FEB-2026**
**07:49 AM**
**Dkt. 58 SO**

NO. CAAP-23-0000289


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


In the Matter of the Request for Payment of,
CHRISTOPHER LAWINSKI, M.D., as Provider for Sean Tilton,
Appellant-Provider-Appellant,
vs.
SCOTT SAIKI, INSURANCE COMMISSIONER, DEPARTMENT OF COMMERCE AND
CONSUMER AFFAIRS, STATE OF HAWAIʻI,[1]
Appellee-Appellee,
and
UNITED SERVICES AUTOMOBILE ASSOCIATION,
Appellee-Respondent-Appellee.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 3CCV-22-0000250)

---

[1]     Pursuant to Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 43(c)(1), Scott Saiki, the current Insurance Commissioner, Department of Commerce and Consumer Affairs, is automatically substituted as Appellee-Appellee herein in place of Colin M. Hayashida.

SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Leonard and McCullen, JJ.)

This secondary appeal involves Appellant-Provider-Appellant Christopher Lawinski, M.D.'s (**Dr. Lawinski**) challenge to Appellee-Respondent-Appellee United Services Automobile Association's (**Insurer**) denial of personal injury protection (**PIP**) benefit reimbursement on grounds that the treatment provided to the patient was not "substantially comparable to the requirements for prepaid health care plans" under the PIP statute, Hawaii Revised Statutes (**HRS**) § 431:10C-103.5(a).[2] We affirm.

Dr. Lawinski appeals from the Circuit Court of the Third Circuit's (**Circuit Court**)[3] March 20, 2023 "Findings of Fact [(**FOFs**)] and Conclusions of Law [(**COLs**)]; Order" (**Circuit Court Order**), and December 19, 2023 Final Judgment. The Circuit Court Order affirmed the July 26, 2022 Final Order of Appellee-

_____

[2]     HRS § 431:10C-103.5 (2019), entitled "Personal injury protection benefits; defined; limits," defines PIP benefits as follows:

> (a) Personal injury protection benefits, with respect to any accidental harm, <u>means all appropriate and reasonable treatment and expenses necessarily incurred as a result of the accidental harm and which are substantially comparable to the requirements for prepaid health care plans</u>, including medical, hospital, surgical, professional, nursing, advanced practice nursing licensed pursuant to chapter 457, dental, optometric, naturopathic medicine, chiropractic, ambulance, prosthetic services, medical equipment and supplies, products and accommodations furnished, x-ray, psychiatric, physical therapy pursuant to prescription by a medical doctor, occupational therapy, rehabilitation, and therapeutic massage by a licensed massage therapist when prescribed by a medical doctor.

(Emphasis added.)

[3]     The Honorable Henry T. Nakamoto presided.

Appellee Scott Saiki, Insurance Commissioner, Department of Commerce and Consumer Affairs, State of Hawai'i (**Commissioner**) that adopted the June 15, 2022 "Hearings Officer's [FOFs], [COLs], and Recommended Order" (**Hearings Officer's Order**), which concluded that Dr. Lawinski did not establish that "the claims for [Erchonia Low Level Laser Therapy (**LLLT**)] treatment charged under [billing] code 97039 are compensable [PIP] benefit [sic] as defined under HRS § 431:10C-103.5(a)."

On appeal, Dr. Lawinski contends that the Circuit Court erred by: **(1)** holding LLLT treatments were not PIP benefits under HRS § 431:10C-103.5(a), concluding the PIP statute was "unambiguous," failing to confirm the legislative intent of HRS § 431:10C-103.5(a) was "to provide generous PIP benefits," and giving "deference" to the Hearings Officer's Order; **(2)** entering FOFs and COLs "based upon [Insurer's] Exhibits F to L, which had been erroneously received into evidence over [Dr. Lawinski]'s objections"; and **(3)** denying Dr. Lawinski's request for attorney's fees, costs, and expenses.[4]

Upon review of the record on appeal and relevant legal authorities, giving due consideration to the issues raised and arguments advanced by the parties, we resolve the contentions as follows.

"Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal."

---

[4]     Dr. Lawinski's points of error (**POEs**), which we have consolidated and condensed for clarity, do not comply with HRAP Rule 28(b)(4).  The POEs are not numbered and do not contain where in the record the alleged error occurred and was preserved before the lower court or agency.  See HRAP Rule 28(b)(4).  Despite the noncompliance, we address Dr. Lawinski's arguments. See Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012) (addressing case on the merits despite noncompliance with HRAP Rule 28 "where the remaining sections of the brief provide the necessary information to identify the party's argument" and to "afford[] litigants the opportunity to have their cases heard on the merits, where possible" (citation modified)).

Allstate Ins. Co. v. Schmidt, 104 Hawaiʻi 261, 264, 88 P.3d 196, 199 (2004) (citation omitted).  We apply "the standards set forth in HRS § 91-14(g)" to determine whether the Circuit Court's decision was "right or wrong."  Id. (citation omitted).

The Hearings Officer's Order contained the following analysis supporting the determination that Dr. Lawinski failed to establish that the LLLT treatment in this case was "substantially comparable to the requirements for prepaid health care plans," which is required for reimbursement as a PIP benefit:

> In determining whether [Dr. Lawinski] is entitled to reimbursement of [PIP] benefits for the LLLT treatment . . . , the Hearings Officer must consider not only whether the treatment was appropriate and reasonable, but also whether the treatment is substantially comparable to the requirements for prepaid health care plans.
>
> [Dr. Lawinski] submitted little, if any, evidence that the LLLT treatment provided to [the patient] is substantially comparable to the requirements for prepaid health care plans. In support of his position that the LLLT treatments provided are compensable [PIP] benefits, [Dr. Lawinski] submitted exhibits of payment for claims of LLLT treatment charged under code 97039 from DTRIC/Corvel, State Farm, Allstate and GEICO. See Exhibits 36-43. However, [Dr. Lawinski] admitted those claims were initially denied and payments made only after [Dr. Lawinski] requested administrative review of the claim denials. Further, [Dr. Lawinski] acknowledged that the disputes were all settled and the matters were dismissed. The Hearings Officer does not consider these exhibits relevant and assigns no weight to [Dr. Lawinski]'s exhibits of payments made by DTRIC/Corvel, State Farm, Allstate and GEICO.
>
> The Hearings Officer notes exhibits submitted by both parties indicate Aetna, Cigna, and HMSA do not consider LLLT treatment reimbursable. [Dr. Lawinski] objected to acceptance of [Insurer] Exhibits "F" through "L" consisting of documents from Aetna, Cigna, HMSA, Medicare, and Kaiser on the basis the authors of the documents were unavailable for cross-examination. The Hearings Officer received the documents into evidence over [Dr. Lawinski]'s objection. However, the Hearings Officer notes [Dr. Lawinski]'s Exhibits "48" - "50" and "59" are similar to [Insurer]'s documents from Aetna, Cigna, and HMSA that [Dr.

4

Lawinski] objected to. Based on the evidence submitted, the Hearings Officer concludes Aetna, Cigna, and HMSA do not cover LLLT. The record further establishes Medicare, arguable [sic] the larges [sic] prepaid health plan, does not consider LLLT reasonable and necessary and considers LLLT procedures non-covered billed under any [current procedural terminology (**CPT**)] code, including procedure code 97039. The Hearings Officer notes [Dr. Lawinski]'s witness Steven Shanks [(**Shanks**)][5] testified he did not know if LLLT treatment was covered by prepaid health care plans in Hawaii. The Hearings Officer also notes [Dr. Lawinski]'s testimony that his practice does not contract with prepaid health care plans. [Dr. Lawinski] further testified he has never billed or been reimbursed by a prepaid health care plan for claims of LLLT treatment.

In determining whether the LLLT treatment [Dr. Lawinski] administered to [the patient] is substantially comparable to the requirements for prepaid health care plans, the Hearings Officer considers the evidence that Aetna, Cigna, HMSA, Medicare do not cover LLLT treatment. The Hearings Officer does not consider [Insurer]'s Exhibit "K", a document from Kaiser Foundation Health Plan. The Hearings Officer considers Steven Shanks [sic] testimony that he did not know if LLLT treatment was covered by prepaid health care plans in Hawaii. The Hearings Officer also considers [Dr. Lawinski]'s testimony that [Dr. Lawinski] has never been reimbursed charges for LLLT treatment by a prepaid health care plan. The Hearings Officer notes [Dr. Lawinski] did not submit any evidence that LLLT treatment is reimbursed by prepaid health care plans. Based on the record, the Hearings Officer concludes [Dr. Lawinski] has failed to establish the LLLT treatment provided to [the patient] is substantially comparable to the requirements for prepaid health care plans.

(Footnote and emphases added.)

The Circuit Court Order affirmed the Hearings Officer's Order and concluded that LLLT treatment was not a PIP benefit under HRS § 431:10C-103.5(a), as follows:

5. The primary issue on appeal is "whether the Commissioner and Hearings Officer correctly concluded that the []LLLT treatments administered by [Dr. Lawinski] were NOT [PIP] benefits" under [HRS] § 431:10C-103.5(a).

. . . .

---

[5] Shanks is the president of Erchonia Corporation, the manufacturer of the LLLT treatment laser.

8. Hearings Officer Hikida rightfully held that *HRS* § 431:10C-103.5(a) is unambiguous, and statutory interpretation is unnecessary.

9. [HRS] § 43l:10C-103.6(a) provides in pertinent part:

> The benefits provided under section 431:10C-103 shall be substantially comparable to the requirements for prepaid health care plans, as provided in chapter 393 . . . [sic]

10. [HRS] Chapter 393, the Prepaid Health Care Act, sets forth the requirements for prepaid health care plans. To wit, to qualify as a prepaid health care plan under *HRS* Chapter 393, a health care plan must provide "health-care benefits equal to, or medically reasonably substitutable for, the benefits provided by prepaid health plans of the same type. [sic] . . which have the largest number of subscribers in the State. . . ." *See HRS* §393-7(a).

11. [Dr. Lawinski] failed to present any evidence establishing that LLLT therapy are [sic] substantially comparable to the requirement for prepaid health care plans.

12. The [Certified Record on Appeal] supports that LLLT treatment has not been approved by Hawaii prepaid healthcare plans or Medicare that consider it experimental and investigational. Among the major prepaid health care carriers that have deemed LLLT treatment experimental and investigational are Aetna, Cigna, Blue Cross and Blue Shield, HMSA and Kaiser.

13. The Commissioner and Hearings Officer correctly concluded that []LLLT treatments administered by [Dr. Lawinski] were NOT [PIP] benefits.

(Internal CROA citations omitted and first ellipses added.)

**(1)** Dr. Lawinski argues that the clause "substantially comparable to the requirements for prepaid health care plans" in HRS § 431:10C-103.5(a) is ambiguous and requires statutory interpretation. Dr. Lawinski asserts that the statute provides no "method or procedure or objective criteria by which one could go about measuring the substantial comparability of Erchonia LLLT . . . to the long list of general types of required health care benefits listed in HRS [§] 393-7."

Commissioner and Insurer contend that the phrase, "substantially comparable to the requirements for prepaid health care plans," is not ambiguous, and statutory interpretation is not necessary.  They point to a related statute, HRS § 431:10C-103.6[6] as providing the explanation for the language at issue in the PIP statute.  Dr. Lawinski does not address HRS § 431:10C-103.6 in his briefs.

"The interpretation of a statute is a question of law which this court reviews de novo."  Rosehill Tr. of Linda K. Rosehill Revocable Tr. Dated Aug. 29, 1989 v. State, 155 Hawaiʻi 41, 49, 556 P.3d 387, 395 (2024) (citation omitted).  We are guided by the following statutory interpretation principles:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Id. (citation omitted).

---

[6]     HRS § 431:10C-103.6 (2019), entitled "Personal injury protection benefits tied to prepaid health care plan for description of coverage only," provides in pertinent part:

> (a) The benefits provided under section 431:10C-103.5 shall be substantially comparable to the requirements for prepaid health care plans, as provided in chapter 393 and rules of the department of labor and industrial relations, pertaining to the Prepaid Health Care Act. The reference to the Prepaid Health Care Act is only for purposes of describing the coverages and exclusions, without regard to any specific insurer or plan, and shall not be construed to transfer coverage to the prepaid health care plans.

(Emphasis added.)

7

The plain language of the PIP statute, HRS § 431:10C-103.5(a), does not define or explain the phrase "substantially comparable to the requirements for prepaid health care plans." No definition of this phrase is provided in the applicable definitions section, HRS § 431:10C-103.  Contrary to the Circuit Court's and the Hearings Officer's rulings that the PIP statute is unambiguous, we conclude there is doubt and uncertainty on the meaning of "substantially comparable to the requirements for prepaid health care plans."  This ambiguity, however, is readily resolved by looking to the immediately following statute, HRS § 431-10C-103.6, which specifically cross-references HRS § 431:10C-103.5 and provides explanation for the "substantially comparable to the requirements for prepaid health care plans" language.  See HRS § 1-16 (2009) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other" and that "[w]hat is clear in one statute may be called in aid to explain what is doubtful in another.").

HRS § 431:10C-103.6 expressly applies to "[t]he benefits provided under section 431:10C-103.5."  Its title states that "[PIP] benefits" are "tied to prepaid health care plan for description of coverage only," and the statutory text states that PIP benefits "shall be substantially comparable to the requirements for prepaid health care plans, as provided in chapter 393 and rules of the department of labor and industrial relations [(**DLIR**)], pertaining to the Prepaid Health Care Act." (Emphasis added.)  HRS § 431:10C-103.6 further explains that "[t]he reference to the Prepaid Health Care Act is only for the purposes of describing the coverages and exclusions[.]" (Emphasis added.)  Thus, the reference in both HRS §§ 431:10C-103.5 and 431:10C-103.6 to the prepaid health care plans under

8

the Prepaid Health Care Act is "for purposes of describing the coverages," i.e., what benefits are covered.  Construing HRS §§ 431:10C-103.5 and 431:10C-103.6 in pari materia, PIP benefits must be "substantially comparable" to benefits that are required to be covered under prepaid health care plans "as provided in chapter 393"[7] and DLIR Rules.

Here, the Hearings Officer concluded that LLLT treatments were not "substantially comparable to the requirements for prepaid health care plans" based on the following evidence:  exhibits that showed that other prepaid healthcare plans, such as "Aetna, Cigna, HMSA, Medicare," did "not cover LLLT treatment"; Shanks's testimony "that he did not know if LLLT treatment was covered by prepaid health care plans in Hawaii"; and Dr. Lawinski's testimony that he "has never been reimbursed charges for LLLT treatment by a prepaid health care plan."  The Hearings Officer determined that Dr. Lawinski "did not submit any evidence that LLLT treatment is reimbursed by prepaid health care plans" and therefore "failed to establish" that the LLLT treatments in this case were "substantially comparable to the requirements for prepaid health care plans." The Hearings Officer's mixed finding and conclusion in this regard was supported by the record and not clearly erroneous. See Kilakila 'O Haleakala v. Bd. of Land, 138 Hawai'i 383, 396, 382 P.3d 195, 208 (2016) ("A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent

---

[7]     HRS § 393-7(a) (2015) explains the "requirements for prepaid health care plans" shall include "health care benefits equal to, or medically reasonably substitutable for, the benefits provided by prepaid health plans of the same type, . . . which have the largest numbers of subscribers in the State."  This qualification requirement "applies to the types and quantity of benefits as well as to limitations on reimbursability[.]"  Id.

upon the facts and circumstances of the particular case."
(citation omitted)).  Further, where mixed questions of fact and
law are presented, we defer to the agency's expertise and
experience in the particular field and will not substitute our
judgment for that of the agency.  Dole Haw. Div.-Castle & Cooke,
Inc. v. Ramil, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990).

　　　　We conclude the Circuit Court was not wrong in COLs 11
and 13 to affirm the Commissioner's and Hearings Officer's
determination that the LLLT treatments were not PIP benefits
under HRS §431:10C-103.5(a) based on a lack of evidence that
LLLT treatment was substantially comparable to the requirements
for prepaid health care plans.  See Schmidt, 104 Hawaiʻi at 264-
65, 88 P.3d at 199-200.  The Circuit Court was not wrong to
apply the principle of agency deference in COL 4.[8]  See id.

　　　　**(2)** Dr. Lawinski challenges COL 12 on grounds that it
relies on Insurer's Exhibits "F" through "L," which should not
have been admitted because the "documents contained hearsay,"
the documents "were not authenticated," and "the authors of the
documents were not available for cross examination."

　　　　Commissioner responds that the Hearings Officer was
"permitted to receive the documents into evidence[,]" where
Insurer's Exhibits "F" through "L" consisted of "documents

---

[8]　　　COL 4 in the Circuit Court Order stated:

　　　4. While courts are "free to reverse the agency's decision
　　　if affected by an error of law," the Hawaiʻi Supreme Court
　　　has said that "[w]here both mixed questions of fact and law
　　　are presented, deference will be given to the agency's
　　　expertise and experience in the particular field and the
　　　court should not substitute its own judgment for that of
　　　the agency." Camara v. Agalsud, 67 Haw. 212, 216, 685 P.2d
　　　794, 797 (1984); Dole Hawaii division-Castle & Cooke, Inc.
　　　v. Ramil, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990).

10

relating to whether LLLT is reimbursable by Aetna, Cigna, Medicare, HMSA, and Kaiser[,]" which all "go directly to the requirements for prepaid health care plans[.]" Commissioner also points out that Dr. Lawinski admitted evidence "similar" to the challenged evidence. Insurer argues that the challenged exhibits were admissible under Hawai'i Administrative Rules (**HAR**) Rule § 16-201-21(a),[9] and the exhibits do not change the fact that Dr. Lawinski nevertheless "failed to present any evidence that []LLLT treatments were 'reimbursed by prepaid care plans[.]'"

The record reflects that Insurer's Exhibits "F" through "L" consisted of documents from Aetna, Cigna, HSMA, Medicare, and Kaiser.[10] The Hearings Officer's Order pertinently noted that Dr. Lawinski's Exhibits 48, 49, 50, and 59 were "similar to [Insurer]'s documents from Aetna, Cigna, and HMSA" that Dr. Lawinski had "objected to." Based on Insurer's

---

[9]    HAR Rule § 16-201-21(a) (1990) provides that "[t]he admissibility of evidence at the hearing shall not be governed by the laws of evidence and all relevant oral or documentary evidence shall be admitted if it is the sort of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs."

[10]    Exhibit F was Aetna's 2017 policy stating that Aetna considered LLLT to be "experimental and investigational"; Exhibit G was Cigna's 2017 policy stating that LLLT was considered "experimental, investigational or unproven" for "any indication"; Exhibit H was a document that discussed "infrared therapy devices" and stated that such devices had no "Nationally Covered Indications"; Exhibit I was a document that stated LLLT therapy was "considered not reasonable and necessary" and "not payable by Medicare"; Exhibit J was a 2018 HMSA document that discussed "chiropractic services" and stated "laser therapy . . . d[id] not meet payment determination criteria as there [wa]s no evidence from published, controlled clinical studies which demonstrate[d] their efficacy"; Exhibit K was Kaiser Permanente's 2014 "Clinical Review Criteria" for LLLT "for pain," which stated that LLLT did "not meet the *Kaiser Permanente Medical Technology Assessment Criteria*"; Exhibit L was a 2017 HMSA document that discussed "physical therapy" and stated that "laser therapy . . . d[id] not meet payment determination criteria as there [wa]s no evidence based on published, controlled clinical studies which demonstrate[d] their efficacy."

Exhibits "F" through "L," the Hearings Officer found that: "Aetna, Cigna, and HMSA do not cover LLLT"; and that "Medicare, arguable [sic] the larges [sic] prepaid health plan, d[id] not consider LLLT reasonable and necessary and consider[ed] LLLT procedures non-covered billed under any CPT code[.]" The Circuit Court concluded in COL 12 that the Hearings Officer's findings were supported by the record, stating, "The CROA supports that LLLT treatment has not been approved by Hawaii prepaid healthcare plans or Medicare that consider it experimental and investigational."

Dr. Lawinski's arguments tether the challenged admission of Insurer's Exhibits "F" through "L" as the basis for the "clearly erroneous" conclusion in COL 12 that LLLT treatment is "experimental and investigational." Dr. Lawinski points to the testimony of Shanks and himself that "LLLT is not experimental or investigational" because it had "FDA clearances," and that he was denied the opportunity to cross-examine "the false factual conclusions that LLLT is experimental and investigational" that were later adopted by the Hearings Officer and Circuit Court.

"[R]ules of evidence in administrative hearings, unlike those applicable to judicial proceedings, allow admission of hearsay evidence." Price v. Zoning Bd. of Appeals of City & County of Honolulu, 77 Hawaiʻi 168, 176, 883 P.2d 629, 637 (1994) (citation omitted).

Here, Insurer's Exhibits "F" through "L" consisted of copies of various prepaid health care plans' coverage policies regarding LLLT. Hearsay evidence is permissible in administrative hearings. See id. The policies in the challenged exhibits were relevant because the disputed issue was

whether LLLT treatments were "substantially comparable to the requirements of prepaid healthcare plans," i.e., whether LLLT treatment was a covered benefit under prepaid health care plans. The Hearings Officer did not err in admitting them. See HAR Rule § 16-201-21(a).

Even assuming arguendo the "experimental or investigational" language in the Circuit Court's COL 12 was error, Dr. Lawinski has not shown prejudice resulting from the exhibits' admission, where Dr. Lawinski admitted similar exhibits into evidence, and where the Hearings Officer determined that Dr. Lawinski "did not submit any evidence that LLLT treatment is reimbursed by prepaid health care plans." See S. Foods Grp., L.P. v. State, Dep't of Educ., 89 Hawai'i 443, 453, 974 P.2d 1033, 1043 (1999) (to reverse or modify an agency decision under HRS § 91-14(g), "the appellate court must conclude that an appellant's substantial rights were prejudiced by the agency" (citation omitted)). The Circuit Court's conclusion in COL 11, that Dr. Lawinski "failed to present any evidence establishing that LLLT therapy are [sic] substantially comparable to the requirement for prepaid health care plans" was dispositive and correct. See Schmidt, 104 Hawai'i at 264-65, 88 P.3d at 199-200.

**(3)** Dr. Lawinski argues that he should be awarded attorney's fees, costs, and expenses "for his successful prosecution of this matter" because "the statute is clear that [Dr. Lawinski] will be entitled to all of the costs and fees which he has incurred in this matter," "[w]hen this Court rules that Erchonia LLLT is a reimbursable PIP benefit[.]"

While the Circuit Court Order did not expressly address attorney's fees and costs, the Commissioner's Final

13

Order ordered the parties to bear their own attorney's fees and costs.  In light of our resolution, Dr. Lawinski's contention lacks merit.

For the foregoing reasons, we affirm the March 20, 2023 Circuit Court Order and December 19, 2023 Final Judgment entered by the Circuit Court of the Third Circuit.

DATED:  Honolulu, Hawai'i, February 13, 2026.

On the briefs:

Leslie K. Iczkovitz,
for Appellant-Provider-
Appellant.

Andrew I. Kim,
Deputy Attorney General
for Appellee-Appellee Scott
Saiki, Insurance Commissioner,
Department of Commerce and
Consumer Affairs, State of
Hawai'i.

Keith K. Kato,
for Appellee-Respondent-
Appellee United Services
Automobile Association.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge